**MUNICIPALITY OF ANCHORAGE, Petitioner,**

v.

**Patrick A. HIGGINS, Respondent.**

**No. 3316.**

Supreme Court of Alaska.

May 6, 1988.

Donald W. Edwards and Philip Matricardi, Asst. Mun. Attys., Jerry Wertzbaugher, Mun. Atty., Anchorage, for petitioner.

Constance E. Livsey, Jermain, Dunnagan & Owens, Anchorage, for respondent.

Before MATTHEWS, C.J.,
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

## OPINION

BURKE, Justice.

### I

In January, 1983, Patrick Higgins was hired as Classification and Pay Manager in the Department of Human Resources for the Municipality of Anchorage. In that position, Higgins was a classified employee, entitled to all of the rights and protections guaranteed to such employees under the municipality's personnel rules, which are contained in Title 3, Chapter 30 of the Anchorage Municipal Code (AMC). *See* AMC 3.30.005(M), .012. These include the rights to reasonable notice prior to termination, progressive discipline, and termination only for just cause.

On November 14, 1984, without prior notice or consent from Higgins, then-Mayor Tony Knowles ordered reclassification of Higgins' position[1] from that of "classified" to "executive" employee.[2] Executive employees are governed by Rule 17 of the personnel rules (AMC 3.30–.171–.177), which provides that such employees serve at "the [mayor's] pleasure," and are "without right of grievance or appeal." AMC 3.30.176. Higgins was officially informed of the reclassification by letter dated December 10, 1984.[3] Although there is some evidence that Higgins orally complained to Human Resources Director Frank Austin about the change, Higgins did not file a written grievance, as provided under AMC 3.30.100–.102.

Higgins was terminated on November 15, 1985, in accordance with the procedures described in AMC 3.30.176 for the termination of executive employees.[4] The parties agree that, had Higgins been a classified employee at the time of his termination, "he would not have been terminated because there was not just cause to terminate him."

Higgins subsequently filed suit against the municipality, alleging, *inter alia,* breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, false procurement of employment (*see* AS 23.10.015), and violation of state and federal due process. Higgins' claims are predicated primarily upon his contention that the reclassification of his position from classified service to executive status, and his subsequent termination "were wrongful and contrary to law."

The municipality moved for summary judgment contending, among other things,[5] that Higgins' suit was barred because he had failed to exhaust the administrative remedies provided under the municipality's personnel rules. The court denied the motion, and we granted the municipality's petition for review of that ruling.[6]

### II

Higgins' breach of contract theory is based upon an allegation that the municipality's personnel rules were known to and relied upon by Higgins at the time he was hired, and thus "[created contractual obli-

---

1. Four other Human Resource Division managers were also reclassified at that time.

2. No significant change in duties or compensation accompanied the reclassification of Higgins' position.

3. The municipality claims that Higgins had informal notice of the pending change shortly before it went into effect. Higgins disputes this fact.

4. Higgins was offered, but refused to accept, a demotion in lieu of termination.

5. The municipality also argued that it was entitled to judgment in its favor because (1) the undisputed facts demonstrated that Higgins' claims were without merit, and (2) Higgins waived his right to protest the reclassification by failing to promptly contest the municipality's action after learning of it in December, 1984.

6. The municipality petitioned this court for review of numerous pretrial rulings by the lower court. We granted the municipality's petition, but limited our consideration solely to the issue of whether the trial court erred in denying the motion for summary judgment on the grounds that Higgins failed to exhaust his administrative-arbitration remedy.

gations] binding upon the employer." He argues that the municipality breached those contractual obligations when it changed his classification without complying with the procedures provided by the personnel rules for instituting such a change.

■ Under the personnel rules, classified employees are required to seek resolution of "any dispute involving the interpretation, application or alleged violation of any rule or section of the Personnel Rules," AMC 3.30.100, through a specified grievance procedure, beginning with an appeal to the agency head and then the mayor, and ending with submission of the issue to binding arbitration at the election of the employee. AMC 3.30.101–.102. Higgins does not dispute that the grievance procedures contained in the personnel rules became contractual terms of his employment with the municipality. Nor does he dispute that he would, as a general rule, be required to exhaust these contractually provided remedies before pursuing judicial relief. *See Eidelson v. Archer*, 645 P.2d 171, 178–79 (Alaska 1982) (hospital bylaws form "integral part of the contractual relationship" between doctor and hospital, and doctor must exhaust remedies provided therein before seeking judicial relief); *Van Hyning v. University of Alaska*, 621 P.2d 1354, 1355–56 (Alaska 1981) (appeal to tenure committee must precede university professor's attempt at judicial relief); *accord International Brotherhood of Teamsters,*

*Local 959 v. King*, 572 P.2d 1168, 1172 n. 9 (Alaska 1977); *Kopke v. Ranney*, 16 Wis. 2d 369, 114 N.W.2d 485, 487 (1962). Rather, he argues that his failure to exhaust those administrative remedies was excused because two of the three steps available under the grievance procedure involved appeals to the very individuals responsible for his reclassification in the first place,[7] thus rendering that remedy an "utter exercise in futility." The trial court accepted Higgins' argument in this regard. We reverse.

In *Eidelson v. Archer*, 645 P.2d 171, 181 (Alaska 1982), we recognized that the exhaustion of administrative remedies requirement is not absolute, and that it may, in appropriate cases, be dispensed with "where the administrative remedy is inadequate or where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision." In this case, although Higgins was required to bring his claims *initially* to Austin and Knowles, he was also entitled, at his election, to reject their determinations and request that the matter be submitted to binding arbitration before an impartial arbitrator. AMC 3.30.102.[8] Higgins does not suggest that an arbitrator would have been without authority to determine whether the Mayor had complied with the personnel rules in reclassifying Higgins' position, and he offers no reason why an arbitrator would have been unable to afford him complete relief against the city.[9] Moreover, Higgins has failed to make any showing

---

7. AMC 3.30.101 provides that the aggrieved employee must go first to his "agency head," in this case Frank Austin, Director of Human Resources, and then to Mayor Knowles. Both Austin and Knowles appear to have been in agreement on the validity of the decision to reclassify.

8. AMC 3.30.102 provides in part:
   If a timely request for arbitration is received, the employee and the director shall exchange lists of not more than five names of suggested arbitrators and shall meet within five days to agree on a mutually acceptable arbitrator. If no agreement can be reached within five days of such meeting, the parties shall select an arbitrator by the striking method from a permanent list of arbitrators in the Anchorage area. This list will be supplied to the parties by the American Arbitration Asso-

ciation. The arbitrator shall be selected within five days from receipt of the permanent list. Arbitration shall commence as soon as possible following the appointment of the arbitrator.
   ... The decision of the arbitrator shall be final and binding on all parties and shall only be subject to appeal in the Superior Court in accordance with AS 09.43.120–.150. Either party may make application to the Superior Court to enforce a decision of the arbitrator.

9. Indeed, under the rules, the parties may submit to the arbitrator "any dispute involving the interpretation, application or alleged violation of any rule or section of the Personnel Rules," AMC 3.30.100, and the arbitrator may render a decision which is "final and binding on all parties." AMC 3.30.102.

that a resort to arbitration under the personnel rules would so certainly result in an adverse decision as to render the remedy "futile." *See Eidelson,* 645 P.2d at 181. In the absence of such showings, and in light of the undisputed availability of arbitration under the rules, we think it plain that the superior court erred in denying the municipality's exhaustion of remedies claim based upon the futility exception.[10]

### III

■ Notwithstanding our ruling on the futility issue, Higgins points out that we may uphold the lower court's ruling if there is any other ground apparent, from the record, which, as a matter of law, would support the result reached by the trial court. *See Carlson v. State,* 598 P.2d 969, 973 (Alaska 1979); *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961). Higgins contends that the superior court's ruling may be upheld on the alternative ground that the municipality is estopped[11] from asserting the exhaustion of remedies defense in light of certain statements allegedly made to Higgins by Austin following the reclassification.[12] We decline Higgins' invitation to dispose of the question on this alternative ground.

■ This case comes to us on petition for review and, thus, we review the lower court's ruling without the benefit of a full trial court record. *See* Alaska R.App.P. 403(b); *cf.* Alaska R.App.P. 210(a). The estoppel issue now relied upon by Higgins, while arguably raised in the court below, was never fully briefed or argued by the parties. Moreover, it is clear that the matter was given little or no consideration by the trial court in reaching its decision. Thus, on the record presently before us, we are unable to determine with certainty whether any genuine issue of material fact remains for determination with regard to Higgins' estoppel claim. Accordingly, we remand the issue to the trial court for further consideration.

In accordance with the foregoing, the superior court's denial of the municipality's motion for summary judgment based upon the futility exception to the exhaustion of remedies doctrine is REVERSED, and the matter is REMANDED to the superior court for reconsideration of Higgins' alternative estoppel claim.

---

**10.** In fact, the court admitted, in delivering its initial decision from the bench, that it had not considered the fact that arbitration was available as a last step in the process:

> THE COURT: What remedy did he have? It was to Austin, to the Mayor, was it not?
> MR. MATRICARDI: And then to an arbitrator.
> THE COURT: Well, the arbitration question, the issue of whether or not it would have gone to arbitration I did not—it must have been an oversight on my part. I was just looking at it from the standpoint of the standard administrative remedies that would have been available to an employee. And I was interpreting the failure to file a grievance was just to whom. To the Mayor.

Nonetheless, the court adhered, without explanation, to its prior ruling even after opposing counsel pointed out the error.

**11.** Under the doctrine of "quasi" or "equitable" estoppel, a party may be precluded from taking a position inconsistent with one that party has previously taken where circumstances render assertion of the second position unconscionable.

*Jamison v. Consolidated Utilities,* 576 P.2d 97, 101–02 (Alaska 1978). The general elements required for application of the equitable estoppel doctrine are the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice. *Id.* at 102. *See also Municipality of Anchorage v. Schneider,* 685 P.2d 94, 97 (Alaska 1984); *Altman v. Alaska Truss & Mfg.,* 677 P.2d 1215, 1223 (Alaska 1983).

**12.** Higgins claims that he confronted Austin regarding the reclassification, and that Austin represented to him that grievances under the personnel rules would no longer be available to him because Higgins' employment was then governed solely by Rule 17 pertaining to executive employees. Higgins contends that he reasonably relied upon such representations in failing to file his grievance under the rules, and that the municipality may not now be heard to complain of his failure to exhaust his administrative remedy.