John BRUNS and Dennis Saathoff, Appellants,

v.

MUNICIPALITY OF ANCHORAGE, ANCHORAGE WATER & WASTEWATER UTILITY, Appellee.

No. S–9394.

Supreme Court of Alaska.

June 1, 2001.

Rehearing Denied Aug. 14, 2001.

**63.** 823 P.2d 632 (Alaska 1991).

**64.** *Id.* at 636.

Kenneth W. Legacki, Anchorage, for Appellants.

Theresa Hillhouse, Assistant Municipal Attorney, Mary K. Hughes, Municipal Attorney, Anchorage, and Jill D. Bowman, Stoel Rives LLP, Seattle, WA, for Appellee.

1. Overtime work must be approved by the agency head and includes hours actually worked in

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

John Bruns and Dennis Saathoff, former general foremen for the Municipality of Anchorage's Anchorage Water and Wastewater Utility, filed suit in Anchorage Superior Court in 1996 claiming back overtime pay. Bruns and Saathoff alleged that the Municipality owed them overtime pay under federal, state, and municipal law. The superior court granted the Municipality's motion for summary judgment and dismissed the plaintiffs' claims on the basis that the plaintiffs failed to exhaust their administrative remedies. Bruns and Saathoff have appealed this decision. Because Bruns and Saathoff alleged that they were threatened with discharge if they pursued their administrative remedies, there is a factual issue as to whether their failure to exhaust administrative remedies was excused. Therefore, we reverse and remand to the superior court for trial of this factual issue.

## II. FACTS AND PROCEEDINGS

John Bruns and Dennis Saathoff are former employees of the Anchorage Water and Wastewater Utility, a utility owned by the Municipality of Anchorage. Both Bruns and Saathoff spent the last phases of their careers at Anchorage Water and Wastewater Utility as general foremen. Bruns was a general foreman from June 11, 1983 until his retirement on January 26, 1996. Saathoff was a general foreman from 1979 or 1980 until his retirement on April 29, 1994. As general foremen, Bruns and Saathoff were "non-represented employees" and not within a union's bargaining unit.

The Municipality has an ordinance governing overtime pay for non-represented Municipal employees such as Bruns and Saathoff. Anchorage Municipal Code (AMC) 3.30.129(B)(1) states as a general rule that "overtime" work [1] must be compensated at one and one-half times the normal pay rate.

excess of 40 hours in a week. AMC 3.30.129(B)(1).

Sometime during 1995 it came to the attention of Thomas Tierney, Director of the Municipality's Department of Employee Relations, that the Municipality was inconsistently applying AMC 3.30.129. In a meeting on October 3, 1995, Tierney reported to the mayor and other Municipality officials that many non-represented Municipality employees were entitled to overtime pay under AMC 3.30.129 but were not receiving it. Tierney explained that the employees did not "put in" for the overtime because they had the impression that they were not entitled to it. At the same time, the Municipality considered amending AMC 3.30.129 to eliminate overtime compensation for non-represented employees earning salaries above a certain level, including both Bruns and Saathoff. The Municipality eventually passed an amendment that eliminated overtime for some employees—but for fewer than originally contemplated.[2] This change took place after Bruns and Saathoff both retired.

Both Bruns and Saathoff claim that they worked overtime during their tenure as general foremen, and were not fully compensated for this overtime work. Bruns claims that he responded to an average of nine "call-outs" a year, and he claimed overtime for at least some of these call-outs.[3] However, Bruns was not paid for all of the call-outs that he claimed. Bruns also asserts that he was eligible for "standby" pay[4] but did not put in for it until the last few months of his career, because he was under the impression that he would not get it if he asked for it. Saathoff also claims that he was on standby and did many call-outs, and was not paid overtime pay for any of these services.

On March 1, 1996, Bruns and Saathoff together filed suit against the Municipality in Anchorage Superior Court, claiming an entitlement to back overtime pay.[5] Because they based one claim on the federal Fair Labor Standards Act[6] (FLSA), the Municipality removed the case to the U.S. District Court in Anchorage. Bruns and Saathoff also made claims under state and municipal law; the U.S. District Court exercised supplemental jurisdiction over these claims.

The U.S. District Court granted the Municipality's motion for summary judgment on the federal law claims, because Bruns and Saathoff were "exempt" employees not subject to the FLSA. It remanded claims under state and municipal law to the superior court. The U.S. District Court entered final judgment, and the U.S. Court of Appeals for the Ninth Circuit affirmed the grant of summary judgment.[7]

In the superior court, the Municipality moved for summary judgment on the plaintiffs' state and municipal law claims. Bruns and Saathoff filed an opposition to these motions, and the superior court granted the Municipality's motions for summary judgment, ruling that Bruns and Saathoff failed to exhaust their administrative remedies.

The Municipality moved for an award of attorney's fees and costs, and the superior court awarded $24,421.00 in attorney's fees to the Municipality.

Bruns and Saathoff appeal the superior court's rulings.

### III. *STANDARD OF REVIEW*

This is an appeal of summary judgment entered by a superior court, and therefore should be reviewed de novo.[8] We will affirm a summary judgment if there are no genuine issues of material fact and if the

---

2. Anchorage Ordinance 96–55 (April 2, 1996) (amendment AMC 3.30.129).

3. In a "call-out," an employee is "called out" to perform overtime work after completing a scheduled shift. *See* AMC 3.30.129(B)(2).

4. An employee is on "standby" status when the employee must remain available for work outside of regularly scheduled working hours. *See* AMC 3.30.129(B)(3).

5. In this opinion, Bruns and Saathoff will sometimes be referred to collectively as "the plaintiffs."

6. 29 U.S.C. §§ 201–219.

7. *Bruns v. Municipality of Anchorage*, No. 97–36060, 1999 WL 288910, 182 F.3d 924 (9th Cir. May 10, 1999) (unpublished opinion).

8. *See Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000).

moving party is entitled to judgment as a matter of law.[9]

■ This appeal requires us to decide whether the doctrine of exhaustion of administrative remedies applies to a particular claim; this is a question of law that we review de novo.[10] If this doctrine applies, we will review for abuse of discretion the lower court's findings on whether the available administrative remedies were actually exhausted.[11] Any conclusions of law, such as the conclusion that the failure to exhaust was excused, will be reviewed using our independent judgment.[12]

## IV. *DISCUSSION*

In the superior court, the Municipality successfully moved for summary judgment on all claims asserted by Bruns and Saathoff. The plaintiffs had two different groups of claims in this suit: (i) a state law claim under the Alaska Wage and Hour Act; and (ii) a municipal law claim under AMC 3.30.129(B) and AS 23.05.140(b).

The plaintiffs have only appealed the dismissal of their municipal law claims under AMC 3.30.129(B) and AS 23.05.140(b). Bruns and Saathoff have abandoned their state law (Alaska Wage and Hour Act) claims[13] on appeal, because the Municipality is exempted from the Alaska Wage and Hour Act under AS 23.10.055(5).[14] Therefore, the Alaska Wage and Hour Act is not applicable to this case.

The municipal law claims made by Bruns and Saathoff arise under AMC 3.30.129(B), which requires the Municipality to pay overtime compensation to its employees under some circumstances. This municipal law claim is bound up with a state statute, former AS 23.05.140(b), which provided:

> If the employment is terminated, regardless of the cause of termination, all wages, salaries, or other compensation for labor or services become due immediately and shall be paid within three working days after the termination at the place where the employee is usually paid or at a location agreed upon by the employer and employee.[15]

Former AS 23.05.140(b) required an employer to pay all wages due, including overtime, upon termination of the employee. Anchorage Municipal Code 3.30.129(B), in turn defines what wages are due, and are therefore required to be paid by AS 23.05.140(b).[16] Anchorage Municipal Code 3.30.129(B) states as a general rule that approved overtime work in excess of forty hours per week must be compensated at one and one-half times the normal pay rate.[17] The ordinance also defines and requires compensation for two specialized types of overtime pay—"call-out" pay and "standby" pay.[18]

**9.** *See id.;* Alaska R.Civ.P. 56(c).

**10.** *See State, Dep't of Transp. & Pub. Facilities v. Fairbanks North Star Borough,* 936 P.2d 1259, 1260 n. 3 (Alaska 1997).

**11.** *See State v. Beard,* 960 P.2d 1, 5 (Alaska 1998).

**12.** *See id.*

**13.** The Alaska Wage and Hour Act claims made by Bruns and Saathoff were claims under AS 23.10.060(b) and AS 23.10.110.

**14.** AS 23.10.055 states in part, "The provisions of AS 23.10.050–23.10.150 do not apply to ... (5) an individual employed by the United States or by the state or political subdivision of the state."

**15.** Former AS 23.05.140(b) (1983).

**16.** This is because AS 23.05.140(b) by itself does not define what wages are due—it simply requires that wages that are due be paid.

**17.** AMC 3.30.129(B)(1).

**18.** Former AMC 3.30.129(B) provides:

*Pay rates for overtime premium pay.*
  1. *Time and one-half pay.* Employees shall be paid at one and one-half times their regular rate of pay for all hours actually worked in excess of 40 hours in one week....
  2. *Call-out pay.* When an employee has completed his scheduled shift and is "called out" to perform additional work, he shall receive overtime pay for actual hours worked with a minimum guarantee of four hours' pay at the employee's straight time hourly rate. Overtime pay shall be paid in accordance with subsection B.1 of this section.
  3. *Standby pay.* In cases where it is found necessary to have employees remain available for work in a standby status after regularly scheduled hours, on scheduled days off, or holidays, they shall receive two hours' pay at the straight time rate for each day of such duty. When such an employee is called out for

As already noted, the plaintiffs claim that they are entitled to overtime pay owed to them under AMC 3.30.129(B); if this is true, AS 23.05.140(b) demands that they be paid these wages, since they must be paid wages due to them after termination. However, the superior court, in its decision granting the Municipality's motion for summary judgment, held that the plaintiffs' municipal law claim is foreclosed, because the plaintiffs failed to exhaust the administrative remedies available under AMC 3.30.101. Anchorage Municipal Code 3.30.101 provides for a three-step procedure for grievances filed by employees because of disputes concerning AMC 3.30.129 and other matters.[19] The three steps are: (1) "informal discussion,".(2) decision by agency head after receipt of a written grievance, and (3) decision by the mayor's office.[20]

■ We have stated that the analysis of the doctrine of exhaustion of administrative remedies involves three questions. In applying the doctrine of exhaustion of remedies, we must decide the following: (a) is exhaustion of remedies required?; (b) did the complainant exhaust those remedies?; and (c) is the failure to exhaust remedies excused?[21] These three questions will be discussed in turn.

### A. Bruns and Saathoff Were Required to Exhaust Their Administrative Remedies.

■ Generally, employees must exhaust any administrative remedies that they have before pursuing direct judicial actions against their employers.[22] And, as the Municipality argues, there were administrative remedies available to Bruns and Saathoff: AMC 3.30.100–.102 provides a three-step procedure for grievances—such as those had by Bruns and Saathoff—concerning alleged violations of Title 3, Chapter 30 of the Anchorage Municipal Code.[23] The superior court held that the plaintiffs were required to exhaust the administrative remedies available under AMC 3.30.100–.102. The issue of whether an employee is required to exhaust

work, the standby pay shall be credited toward the minimum call-out payment.

**19.** AMC 3.30.100 defines a "grievance" (subject to the procedure in AMC 3.30.101) as a "dispute involving the interpretation, application or alleged violation of any section of this chapter [including AMC 3.30.129]."

**20.** AMC 3.30.101 provides:
A grievance shall be processed in accordance with the procedures and within the time limits stated in this section and section 3.30.102.
  A. *Step 1—Informal Discussion*
The aggrieved employee shall discuss the grievance with the agency head. If the grievance cannot be resolved informally through discussion, it shall then be reduced to writing as a formal grievance, and the written grievance shall be submitted to the agency head. The written grievance must be submitted within 15 days of the date that the employee knows or has reason to know of the conduct or actions upon which the grievance is based. Failure to notify the municipality within the specified time limits identified in the procedure shall constitute a bar to further action on the alleged grievance. . . .
  B. *Step 2—Decision by Agency Head*
Upon receipt of [the written grievance submitted in Step 1], an agency head shall, within five working days, respond in writing. Upon receipt of the agency head's response, the employee shall have five working days to appeal

the decision in writing to the mayor. If the employee fails to appeal the agency head's decision within five days, such failure to respond will serve to declare the grievance as settled based upon the agency head's decision.
  C. *Step 3—Decision by Mayor*
Within five working days of receipt of a written appeal from the decision of the agency head, the mayor or his designee shall review the matter and respond in writing to the employee's grievance. Upon receipt of the mayor's decision, the employee shall have five working days in which to submit a written request for arbitration to the director. If the employee fails to file a written request for arbitration within the five days, such failure will serve to declare the grievance as settled based upon the mayor's decision.
If, after proceeding through all three steps, the employee is not satisfied with the outcome, the employee may seek arbitration under AMC 3.30.102. The results of this arbitration may be appealed to the superior court under AS 09.43.120–.150.

**21.** See *State, Dep't of Transp. & Pub. Facilities v. Fairbanks North Star Borough*, 936 P.2d 1259, 1260–61 (Alaska 1997).

**22.** See *Wilson v. Municipality of Anchorage*, 977 P.2d 713, 724 (Alaska 1999).

**23.** AMC 3.30.100–.102.

administrative remedies is a question of law that we review de novo.[24]

■ As we have held previously, employees who have a dispute with the Municipality over some provision of the Municipality's "Personnel Rules"[25] are subject to the requirement that employees must exhaust the administrative remedies available to them before seeking judicial relief. In *Municipality of Anchorage v. Higgins,*[26] we considered a case where a plaintiff employee of the Municipality filed suit because he was reclassified from a "classified" to an "executive" employee of the Municipality.[27] We held that the employee in *Higgins* failed to exhaust the remedies available under AMC 3.30.101 before proceeding with judicial action.[28] Like the employee in *Higgins,* Bruns and Saathoff have asserted claims under the Municipality's Personnel Rules. Therefore, like the employee in *Higgins,* they must exhaust the administrative remedies available under AMC 3.30.101.

In two arguments, the plaintiffs claim that, nevertheless, they were not required to exhaust the remedies available under AMC 3.30.101. The plaintiffs claim: (1) that their claim is really a state claim under AS 23.05.140(b), and that there is no exhaustion of remedies requirement for AS 23.05.140(b); and (2) that the exhaustion of remedies requirement does not apply because the plaintiffs are challenging the validity of a statute and not any particular agency decision. For the reasons stated below, we reject both of these arguments.

1. *The requirements of AMC 3.30.129(B) must be fulfilled before AS 23.05.140(b) is considered.*

■ The plaintiffs argue that they were not required to exhaust their administrative remedies because the exhaustion requirement does not apply to AS 23.05.140(b), and that their claims under AMC 3.30.129(B) are better construed as claims under AS 23.05.140(b). Specifically, the plaintiffs claim that there is no exhaustion requirement for AS 23.05.140, that AS 23.05.140 creates rights that are "non-waivable" and not subject to administrative proceedings, that the Municipality is attempting to enforce a fifteen-day "private" statute of limitations that does not apply to AS 23.05.140,[29] and that the grievance process of AMC 3.30.101 is "preempted" by AS 23.05.140.[30] All of these arguments amount to this: the plaintiffs argue that their municipal law claim under AMC 3.30.129(B) is better construed as a state law claim under AS 23.05.140(b), and for the four reasons above, the exhaustion requirement does not apply to AS 23.05.140(b).

The plaintiffs' arguments here fail for one central reason: a violation of AMC 3.30.129(B) is really the predicate for a violation of AS 23.05.140(b). Alaska Statute

24. *See Fairbanks North Star Borough,* 936 P.2d at 1260 n. 3.

25. Title 3, Chapter 30 of the AMC.

26. 754 P.2d 745 (Alaska 1988).

27. Under the Municipality's Personnel Rules, "classified" employees can only be fired for cause, while "executive" employees serve at will without right of grievance or appeal. *See Higgins,* 754 P.2d at 746.

28. *Id.* at 746–48.

29. The administrative remedies procedure required by AMC 3.30.129(B) and AMC 3.30.101 has a built-in 15-day "statute of limitations," since, in the first step of the three-step administrative grievance procedure required by AMC

3.30.101, the claimant is required to submit a written grievance within 15 days after the employee knows of the conduct in question.

30. The plaintiffs argue that AS 23.05.140 preempts AMC 3.30.101 because the municipal ordinance "substantially interferes with the effective functioning of the statute or its underlying purpose." *Foreman v. Anchorage Equal Rights Comm'n,* 779 P.2d 1199, 1203 n. 8 (Alaska 1989). The plaintiffs argue that there is substantial interference because the municipal ordinance's 15–day limitations period interferes with the much longer two-year limitations period under state law to enforce AS 23.05.140. *See* AS 23.10.130. The plaintiffs claim that there is interference because the state limitations period may lapse in the time that it takes to pursue administrative remedies under AMC 3.30.101. The plaintiffs also argue that AMC 3.30.129(B) and AMC 3.30.101 are "in violation of the public policy"

23.05.140(b) only requires employers to pay *all wages due* to terminated employees within three days of termination. However, AS 23.05.140(b) does not define what wages are due, or impose any requirements on employers that any specific wages, including overtime wages, will be due. Anchorage Municipal Code 3.30.129(B), on the other hand, defines what overtime wages are due, by defining and requiring overtime, call-out, and standby pay. As already established, the plaintiffs had to exhaust administrative remedies before bringing a claim for a violation of AMC 3.30.129(B). The plaintiffs cannot show a violation of AS 23.05.140(b) without first showing a violation of AMC 3.30.129(B), so they cannot escape the exhaustion of administrative remedies requirement.

In reaching this conclusion we are guided by our previous decisions concerning the application of AS 23.05.140(b). In *Reed v. Municipality of Anchorage*,[31] we considered a suit brought by an employee for unpaid wages under AS 23.05.140(b). We held that this claim should be construed as a claim under the underlying collective bargaining agreement that defines what wages are due to the employee:

> We do not believe that [the employee's] cause of action is strictly or solely an action for liability upon a statute [AS 23.05.140(b)]. Rather, we construe [the employee's] cause of action in Count I to allege a breach of the collective bargaining agreement.... The agreement contains the specified wage rates at which employees ... are required to be paid. Both parties agree that they are bound by the collective bargaining agreement. *The Municipality's failure to pay the specified wage would be a violation of the collective bargaining agreement.* Thus, [the employee's] complaint alleging that the Municipality failed to pay these rates may be construed to state a cause of action for

breach of the collective bargaining agreement.[32]

In *Reed,* we also held that the six-year contract limitations period for the underlying collective bargaining agreement would apply to the employee's claim, rather than the two-year limitations period for AS 23.05.140(b).[33]

In *Quinn v. Alaska State Employees Ass'n,*[31] we considered a suit brought by an employee for unpaid overtime under AS 23.05.140(b). *Quinn* also stands for the proposition that the underlying authority that defines what wages are due—in *Quinn,* the Alaska Wage and Hour Act—must be looked to *first* to determine *if* wages are due. In *Quinn,* we held that claims barred under the Alaska Wage and Hour Act are not "revived" by AS 23.05.140(b).[35] *Quinn* and *Reed* together indicate that, for a cause of action under AS 23.05.140(b), the court should look first to the underlying statute or agreement that resolves the question of what wages are due.

As we held in *Reed* and *Quinn,* claims under AS 23.05.140 are to be construed as claims under the underlying authority that defines what wages are due. Alaska Statute 23.05.140 does not create "non-waivable" rights because it grants no rights at all unless the wages are owed under AMC 3.30.129(B) or some other authority. *Reed* establishes that the limitations period for AS 23.05.140 does not trump the limitations period for the underlying authority that establishes what wages are due;[36] this also indicates that AMC 3.30.129(B) (as the underlying authority) and AMC 3.30.101 are not preempted by AS 23.05.140. Because the amount of wages must be established by AMC 3.30.129(B) before applying AS 23.05.140(b), we reject each of the arguments made by the plaintiffs concerning the independence of their AS 23.05.140(b) claim.[37]

embodied in AS 23.05.140 because of the conflict between the two limitations periods.

**31.** 741 P.2d 1181, 1186 (Alaska 1987).

**32.** *Reed,* 741 P.2d at 1185 (emphasis added).

**33.** *Id.*

**34.** 944 P.2d 468, 472–73 (Alaska 1997).

**35.** *Id.* at 472.

**36.** 741 P.2d at 1185.

**37.** The plaintiffs' arguments were: AS 23.05.140 has no exhaustion requirement, AS 23.05.140

2. *Bruns and Saathoff sought an administrative remedy.*

■■■ The plaintiffs also claim that they were not required to exhaust their administrative remedies because they were challenging the validity of a statute, and not an administrative decision, and under those circumstances, exhaustion is not required. In *State, Department of Transportation & Public Facilities v. Fairbanks North Star Borough*,[38] and *Carter v. Alaska Public Employees Ass'n*,[39] we held that exhaustion of administrative remedies is not required when an administrative remedy is not appropriate. An administrative remedy is not appropriate when the claimant challenges the validity of a statute authorizing or requiring administrative action and does not seek a particular analysis or application of a statute.[40] In other words, exhaustion is required when the plaintiff seeks relief that the administrative agency in question could have (but didn't) grant—this relief is "administrative." On the other hand, if the plaintiff seeks relief that the administrative agency could not have granted, such as overturning or interpreting a statute, exhaustion is not required because the relief sought is "judicial."

■■■ Bruns and Saathoff claim that exhaustion was not required in their case because they do not challenge any particular agency decision. However, Bruns and Saathoff seek a clearly administrative remedy—they seek payment of allegedly due overtime wages. Bruns and Saathoff do not ask us to interpret or overturn provisions of state and federal law—rather, they ask this court to *enforce* these provisions. Therefore, Bruns and Saathoff seek an administrative remedy

and were therefore required to exhaust their administrative remedies.

B. *Bruns and Saathoff Did Not Exhaust the Available Administrative Remedies.*

The parties do not dispute that Bruns and Saathoff failed to exhaust the available administrative remedies. Both parties agree that Saathoff only proceeded through the first step of the three-step grievance process under AMC 3.30.101,[41] by discussing with his supervisors his dissatisfaction with the overtime pay situation. And, Bruns only proceeded through the second step of the three-step grievance process. Bruns discussed the matter with his supervisors and then filed a written grievance on November 3, 1995 with Tom Tierney, the Municipality's Director of Employee Relations. After Tierney denied Bruns's request for retroactive overtime pay, however, Bruns did not proceed to the third step of the procedure by appealing the matter to the mayor's office. Therefore, neither Bruns nor Saathoff proceeded through all three steps of the administrative process required by AMC 3.30.101, and neither exhausted his administrative remedies.

C. *The Failure to Exhaust Administrative Remedies May Be Excused.*

We have previously held that even if a plaintiff failed to exhaust her administrative remedies, the plaintiff may still seek judicial relief if the failure is excused.[42] The superior court held that the failure of Bruns and Saathoff to exhaust the available administrative remedies is not excused. We will review this decision, which is a conclusion of law, using our independent judgment.[43]

---

creates "non-waivable" rights, the Municipality is attempting to enforce a "private" statute of limitations (AMC 3.30.101), and AMC 3.30.101 is "preempted" by AS 23.05.140.

**38.** 936 P.2d 1259, 1261–62 (Alaska 1997).

**39.** 663 P.2d 916, 922 n. 19 (Alaska 1983).

**40.** *See Fairbanks North Star Borough*, 936 P.2d at 1261–62 (holding that exhaustion is not required where the state challenged the validity of an ordinance that would have been applied by the administrative entity—a planning commission—in question); *Carter*, 663 P.2d at 922 n. 19 (holding that, where the issue was the interpretation

of a public records statute, exhaustion is not required because "the remedy sought is judicial rather than administrative").

**41.** As discussed earlier, AMC 3.30.101 establishes a three-step grievance process: (1) informal discussion; (2) decision by the agency head; and (3) appeal to the mayor's office. After the three-step process, under AMC 3.30.102 the matter may be appealed to arbitration and then to the superior court under AS 09.43.120–.150.

**42.** *See State v. Beard*, 960 P.2d 1, 5 (Alaska 1998).

**43.** *See id.* at 5–6.

Bruns and Saathoff argue that their failure to exhaust the available administrative remedies is excused because threats of retaliatory discharge[44] dissuaded them from going ahead with the grievance process.

■ We have stated that the failure to exhaust administrative remedies is excused "where the administrative remedy is inadequate or where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision."[45] We have never considered the issue of whether fear of retaliatory discharge excuses failure to exhaust administrative remedies. However, fear of retaliatory discharge, like futility, bias, or other defects in the administrative process, can make pursuit of administrative remedies difficult or ineffective, and in some circumstances can excuse the employee's failure to exhaust available administrative remedies.[46]

■ Bruns and Saathoff have both stated under oath that they were threatened with retaliatory discharge when they brought up the subject of overtime pay with their immediate supervisors. This presents a factual question of whether threats were actually made that might excuse the plaintiffs' failure to exhaust their administrative remedies. The superior court failed to address this factual issue explicitly and even if it did so implicitly, a material factual issue remains that prevents summary judgment.[47]

## V. CONCLUSION

Bruns and Saathoff were required to exhaust the available administrative remedies provided by AMC 3.30.101 before bringing this judicial action against the Municipality, and they failed to do so. However, because the plaintiffs alleged under oath that they were threatened with retaliatory discharge if they pursued their administrative remedies, there is a factual issue as to whether the failure is excused. Therefore, we REVERSE the superior court's grant of summary judgment and award of attorney's fees, and REMAND for further proceedings.[48]

44. "Retaliatory discharge" is the discharge of the employee by the employer in retaliation for some activity protected by public policy, such as the employee's exercise of some political or legal right, or the employee's investigation of possible violations of law by the employer. *See Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876, 878–79 (Ill.1981).

45. *Eidelson v. Archer,* 645 P.2d 171, 181 (Alaska 1982).

46. Courts have held that failure to exhaust administrative remedies may be excused where the administrative procedures are ineffective because of lack of meaningful access, bias, futility, or the possibility that the claimant could face irreparable harm if the administrative process is followed. *See* Kevin W. Reese, *Administrative Remedies Must Be Exhausted Absent Circumstances Supporting an Exception to Exhaustion Doctrine,* 47 S.C.L.Rev. 17, 22 (1995); *see also McCarthy v. Madigan,* 503 U.S. 140, 148, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (explaining principle that a failure to exhaust administrative remedies may be excused when the administrative process is biased); *Bowen v. City of New York,* 476 U.S. 467, 483–84, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (holding that a failure to exhaust administrative remedies may be excused when the claimant faces a danger of irreparable harm from the administrative process); *Robyns v. Reliance Standard Life Ins. Co.,* 130 F.3d 1231, 1236 (7th Cir.1997) (applying standard that a failure to

exhaust administrative remedies may be excused where "there has been a lack of meaningful access to the review procedures"); *Eidelson,* 645 P.2d at 181 (establishing that failure to exhaust administrative remedies may be excused where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision). The plaintiffs' fear of retaliatory discharge is a type of harm that could render the administrative remedies here ineffective.

It is well established that retaliatory discharge, if carried out, gives rise to a private right of action against the employer. We have recognized retaliatory discharge claims in our prior decisions. *See Norcon, Inc. v. Kotowski,* 971 P.2d 158, 167 (Alaska 1999) (recognizing that "retaliatory discharge [for whistle blowing activities] gives rise to a cause of action for breach of the duty of good faith and fair dealing"); *Bishop v. Municipality of Anchorage,* 899 P.2d 149, 154 (Alaska 1995) (assessing claim for alleged retaliatory discharge for protected First Amendment activity).

47. Because we find that there is a factual issue as to whether the alleged threats excused the plaintiffs' failure to exhaust administrative remedies, we will not address the plaintiffs' other argument that their failure is excused because the administrative remedies available under AMC 3.30.101 (specifically, the 15–day limitations period) were inadequate.

48. The superior court awarded attorney's fees to the Municipality after granting summary judg-

ment in favor of the Municipality. Because we reverse this grant of summary judgment, the award of attorney's fees must necessarily be reversed as well.