*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JBG MEMORIAL, LLC, | ) | |
| | ) | Supreme Court No. S-18934 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-23-07366 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF TRANSPORTATION AND | ) | No. 7795 – November 14, 2025 |
| PUBLIC FACILITIES, and STATE OF | ) | |
| ALASKA, DEPARTMENT OF | ) | |
| FAMILY AND COMMUNITY | ) | |
| SERVICES, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Christina A. Rankin, Judge.

Appearances: Kevin M. Boots and Brian J. Stibitz, Reeves Amodio, LLC, Anchorage, for Appellant. Sven Fedorow and Jordan O'Connell, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellees.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

HENDERSON, Justice.

## I. INTRODUCTION

Under Alaska law, a state agency must generally procure office space by means of a competitive sealed bidding process. However, in situations where that would be impracticable, the commissioner of the Department of Transportation and Public Facilities (DOT&PF) may approve a single source procurement waiver to bypass the sealed bidding requirement. Any party challenging this action must first exhaust administrative remedies before bringing an action in superior court.

Here, the Department of Family and Community Services (DFCS) sought a single source procurement waiver to lease a new office space. When DFCS's existing lessor found out about the waiver, it filed an action in superior court arguing that the agency had violated the procurement code. However, the lessor made no attempt to seek administrative remedies, and the superior court thus dismissed the action. Because the lessor both failed to exhaust its administrative remedies and failed to establish that such exhaustion was excused, we affirm the judgment of the superior court. We also affirm the superior court's determination that the State was the prevailing party in this matter for the purpose of awarding attorney's fees.

## II. FACTS AND PROCEEDINGS

### A. Facts

In March 2008, JBG Memorial (JBG) agreed to lease its office space located on Fourth Avenue in downtown Anchorage to DFCS for a term of fifteen years.[1] The lease provided that it would expire in February 2023 and that DFCS possessed the option to renew the lease for three additional periods of five years each. The lease also provided that "any holding over after the expiration" of the lease would convert the tenancy to a month-to-month tenancy.

---

[1] The Department of Administration represented the State at the time the lease was executed. DOT&PF has since taken over responsibility for managing State leases.

About ten months before the JBG lease was set to expire, DFCS applied for a waiver to allow a single source procurement of new leased space at the Anchorage Business Park without going through the sealed bidding process.[2] DFCS indicated in its waiver application that there were "building maintenance issues" at the Fourth Avenue property, and that the Anchorage Business Park was closer to key service centers for DFCS clients, including the Alaska Native Medical Center, Beacon Hill, and the Loussac Library.

In August 2022, the DOT&PF commissioner approved DFCS's single source procurement waiver, finding that it was impracticable to manage a competitive bid for a new lease and that approving the waiver was in the State's best interest. Then in October 2022, roughly four months before the JBG lease was set to expire, a DOT&PF contracting officer informed JBG's principal that DFCS had "determined not to exercise [its] available renewal options" and that it intended to "vacate within the first quarter of 2023." The officer also informed the principal that if DFCS could not procure a new space before the JBG lease expired, DFCS would remain in hold-over status at the Fourth Avenue property on a month-to-month basis.

JBG's principal responded by asking for details regarding where DFCS's new space would be, whether its new space would be acquired via the public procurement process, and how long DFCS would be in hold-over status. The contracting officer stated that he was "not able to provide . . . more details at [that]

---

[2]    DOT&PF is responsible for entering into leases for office space for other State agencies. AS 36.30.080(a). Generally, DOT&PF is required to obtain these leases by means of a competitive sealed bidding process. AS 36.30.100(a). However, an agency may bypass this requirement if the commissioner approves an agency's written request for single source procurement. AS 36.30.300(b). To approve the request, the DOT&PF commissioner must find (1) that it is not practicable to award the lease by competitive bidding, and (2) that entering into the lease without competitive bidding is in the State's best interest. AS 36.30.300(a).

time," and that DOT&PF would "be able to share more" once its new contract was in place.

Because DOT&PF would not provide further information regarding the new lease, JBG filed a public records request for information in January 2023. The State did not respond before the JBG lease expired in February. When the JBG lease did expire, DFCS remained in possession of the Fourth Avenue property, triggering the month-to-month tenancy provision of the agreement. Then in June, pursuant to the single source procurement waiver, DOT&PF entered into a lease with JL ABP, LLC (the JL lease) for the Anchorage Business Park office space. Two days after entering into the JL lease, the State released to JBG the records that it had requested in January.

**B.    Proceedings**

In July 2023, JBG filed a complaint in superior court, requesting that DOT&PF and DFCS be enjoined from "terminating" the JBG lease, that the JL lease be declared void, and that DOT&PF and DFCS be required to "adhere to proper bid solicitation procedures." JBG also filed a motion for a preliminary injunction in August, seeking to enjoin the State "from terminating [the] lease with JBG until this lawsuit can be adjudicated." JBG argued that it would suffer irreparable harm in the form of lost rents if the State moved out of Fourth Avenue property, and that it would also lose the "opportunity to competitively bid on the lease."

In September the State moved to dismiss JBG's complaint for failure to exhaust administrative remedies. In response, JBG admitted that it had not exhausted its administrative remedies, but maintained that this failure was excused.

In November, the superior court granted the State's motion to dismiss on the ground that JBG failed to exhaust its administrative remedies. In reaching its decision, the court took all facts contained in JBG's pleadings to be true.

In addressing the State's motion, the court divided JBG's claims into two categories: (1) claims relating to the JBG lease, and (2) claims relating to the JL lease. The court examined each set of claims under the framework we set out in

*Bruns v. Municipality of Anchorage*.[3]   There, we explained that the exhaustion of administrative remedies may be excused if the administrative process would be ineffective due to "lack of meaningful access, bias, futility, or the possibility that the claimant could face irreparable harm."[4]

Pertaining to the JBG lease, the court reasoned that "seeking an injunction [did] not necessarily excuse failure to exhaust administrative remedies."  The court noted that at oral argument, JBG conceded that it could not force the State to remain in holdover status, and found that JBG's claim of irreparable harm did not excuse its failure to exhaust.  The court also found that "the State's delay in providing JBG with information about its move-out date" did not prevent JBG from meaningfully accessing its administrative remedies.

As to the JL lease, the court similarly determined that JBG's failure to exhaust its administrative remedies was not excused.  The court reasoned that the ultimate relief JBG sought — the invalidation of the JL lease — was within the scope of relief JBG could seek administratively.  It also found that the State's delay in responding to JBG's public records request did not deny JBG meaningful access to administrative review procedures because JBG had not even attempted to access those procedures after the JL lease was approved.

Finally, the court concluded that "JBG's allegations of bias" within the administrative appeal process did not excuse JBG's failure to exhaust.  While the court acknowledged JBG's allegation that "[DOT&PF] and DFCS worked together to manufacture false and misleading reasons for not extending the JBG lease," the court also found that "none of JBG's allegations implicate the commissioner [of DOT&PF], who evaluates administrative petitions on appeal, as being complicit in these

---

[3]    32 P.3d 362 (Alaska 2001).

[4]    *Id.* at 371 n.46.

wrongdoings." The court concluded that "[t]he mere fact that the commissioner of [DOT&PF] approved the sole source procurement waiver [did] not mean that he prejudged the issue."

The court concluded that JBG had not pled or otherwise asserted facts that would excuse its failure to exhaust its administrative remedies, and granted the State's motion to dismiss. The State subsequently moved for attorney's fees under Alaska Civil Rule 82, and the court granted the motion.

JBG appeals.

## III. STANDARDS OF REVIEW

We review the superior court's decision to grant a motion to dismiss de novo, construing all facts in the complaint as true and provable.[5] We also review de novo the question whether, as a matter of law, certain facts pled or asserted may excuse the exhaustion of administrative remedies.[6]

---

[5] *Catholic Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 722 (Alaska 2006) (first citing *Nunez v. Am. Seafoods, Inc.*, 52 P.3d 720, 721 (Alaska 2002); and then citing *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000)).

[6] *See Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 449 (Alaska 2012) (recognizing applicable standard of review is abuse of discretion where trial court exercised discretion in deciding whether exhaustion requirement was excused, but that appropriate standard of review is de novo when determining whether exhaustion requirement was excused as matter of law); *Bruns*, 32 P.3d at 366 (applying independent judgment review where excusal reviewed as question of law); *State v. Beard*, 960 P.2d 1, 5 (Alaska 1998) (addressing determination of whether exhaustion requirement is excused as one that may be made as matter of discretion or as matter of law). Here, where the superior court determined as a matter of law that the facts asserted could not excuse the requirement that JBG exhaust its administrative remedies, we review that legal conclusion de novo.

We review the superior court's prevailing party determination and award of attorney's fees for abuse of discretion,[7] and will not overturn it unless the superior court's decision is "manifestly unreasonable."[8]

## IV. DISCUSSION

The superior court's distinction between claims relating to the JBG lease and claims relating to the subsequent JL lease is helpful here.[9] The JBG lease was a contract awarded to JBG under the procurement code, and therefore its claims concerning the lease are governed by AS 36.30.620 (the contract claims provision). The contract claims provision requires a contractor to file any claim concerning a contract awarded under the code with a procurement officer.[10] The officer then must issue a written decision within 90 days.[11] The contractor may appeal that decision to the DOT&PF commissioner.[12] Once the commissioner makes a final decision on the appeal, then the contractor may appeal the commissioner's decision to the superior court.[13]

JBG's claims relating to the JL lease, on the other hand, are governed by AS 36.30.560 (the protest provision). The protest provision allows an interested party to protest a contract awarded to another party by filing a written document containing

---

[7]   *All. of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1123, 1126 (Alaska 2012) (citing *Hutchins v. Schwartz*, 724 P.2d 1194, 1204 (Alaska 1986)).

[8]   *Id.* (quoting *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1092 (Alaska 2008)).

[9]   The State argues that JBG waived its claims relating to the JL lease by failing to structure its argument in this way. We reject that argument because JBG maintains that its claims relating to both leases are intertwined.

[10]   AS 36.30.620(a).

[11]   AS 36.30.620(b).

[12]   AS 36.30.620(d).

[13]   AS 36.30.685(a).

the legal and factual grounds for the protest to a procurement officer.[14] The protestor may then appeal an adverse decision by that procurement officer to the DOT&PF commissioner.[15] As with claims relating to an awarded contract, the commissioner's final decision may be appealed to the superior court.[16]

In sum, Alaska law outlines the administrative processes by which JBG was to pursue claims related to its existing contract with DFCS and to the subsequent JL lease, and the commissioner of DOT&PF would have been the final arbiter of any such administrative claims.

## A. JBG Failed To Identify Facts That Excused Its Failure To Exhaust Administrative Remedies.

To survive a motion to dismiss, a complaint must "set forth allegations of fact consistent with and appropriate to some enforceable cause of action."[17] In reviewing a motion to dismiss, we "presume all factual allegations of the complaint" are true and make "all reasonable inferences . . . in favor of the non-moving party."[18]

JBG concedes that it was required to exhaust its administrative remedies, and that it failed to do so.[19] But it maintains that exhaustion was excused, and that the superior court "misapplied" the standard governing motions to dismiss because it

---

[14] AS 36.30.560.

[15] AS 36.30.590(a).

[16] AS 36.30.685(a).

[17] *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 174 (Alaska 2010) (quoting *Carlson v. Renkes*, 113 P.3d 638, 641 (Alaska 2005)).

[18] *Id.* (quoting *Belluomini v. Fred Meyer Alaska, Inc.*, 993 P.2d 1009, 1014 (Alaska 1999)).

[19] *RBG Bush Planes, LLC v. Kirk*, 340 P.3d 1056, 1061 (Alaska 2015) (providing that exhaustion "is required if a statute or regulation provides for administrative review." (quoting *Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 450 (Alaska 2012)).

"essentially found that no set of facts could excuse JBG's failure to exhaust its administrative remedies."

But JBG's argument mischaracterizes the superior court's findings. In the face of the State's motion to dismiss, JBG was required to identify facts that excused its failure to exhaust.[20] And as explained below, the superior court found that the facts pled in JBG's complaint, in addition to two facts alleged by JBG at oral argument, if true, did not excuse JBG from exhausting its administrative remedies.[21]

### 1. JBG failed to identify facts demonstrating a denial of meaningful access to administrative review procedures.

In *Bruns*, we held that exhaustion may be excused where "there has been a lack of meaningful access to the review procedures" of the administrative agency.[22] Our application of the "meaningful access" provision has involved the principle of notice.[23] If the path to initiating administrative review is clear, such that the plaintiff was on notice of how to proceed, then a plaintiff cannot claim a lack of "meaningful access" to review.[24]

---

[20] *See Winterrowd*, 288 P.3d at 449, 452.

[21] The superior court assumed that the following facts "alluded to" in the complaint and "clarified" by JBG at oral argument were true: that "JBG did not receive notice of the State's intended move-out date or the sole source waiver until after the contract for the new lease at the Anchorage business Park was signed," and that "JBG could not have obtained a final administrative decision voiding the single source procurement waiver through available administrative remedies prior to the State entering the new lease."

[22] 32 P.3d 362, 371 n.46 (Alaska 2001) (quoting *Robyns v. Reliance Standard Life Ins. Co*., 130 F.3d 1231, 1236 (7th Cir. 1997)).

[23] *See Hymes v. DeRamus*, 222 P.3d 874, 884-85 (Alaska 2010) (reversing summary judgment for failure to exhaust because prisoner raised genuine issue of fact by asserting that DOC failed to provide him with copies of "rules and regulations regarding grievances").

[24] *See id.*

JBG argues that "the State denied JBG meaningful access to the administrative appeal process when it falsely told JBG that it had no information regarding the sole source waiver." JBG contends that it "had no way to know that any appeal or other administrative action was necessary because the State refused to provide any information about the use of the sole source procurement process and the award of the JL lease until after it was complete."

While the State agrees that it did not release information relating to the JL lease until after the lease was executed, JBG still had notice as early as October of 2022 — roughly four months before its own lease expired — that the State would not renew it. And the procurement code provided JBG with the ability to initiate administrative review of the State's decision not to renew at that time.[25] Additionally, when JBG later learned about the approval of the single source procurement waiver and execution of the JL lease in June 2023, the procurement code provided JBG a path to administrative review of that decision as well.[26] The facts pled and acknowledged by JBG fail to demonstrate that it was denied notice of or access to these procedures, or that it even attempted to access these procedures before filing an action in superior court. Therefore, JBG cannot show that it was denied meaningful access to its administrative remedies.

### 2. JBG failed to identify facts demonstrating that the administrative process was biased.

Exhaustion may also be excused when a plaintiff demonstrates that the administrative process is biased.[27] Here, JBG argues that DFCS generated "reams of

---

[25] *See* AS 36.30.620(a) (providing that contractor can "file a claim concerning a contract awarded under this chapter with the procurement officer").

[26] *See* AS 36.30.560 ("An interested party may protest the award of a contract, the proposed award of a contract, or a solicitation for supplies, services, professional services, or construction by an agency.").

[27] *Bruns*, 32 P.3d at 371 n.46.

derogatory and often misleading communications regarding JBG and its property" which caused the State to be biased against JBG. JBG further contends that any administrative appeal would have been futile because the commissioner who would decide the administrative appeal was the same commissioner who approved the single source procurement waiver. It further urges that the commissioner would face criminal liability if he ultimately reversed his prior decision approving the single source procurement waiver.

First, as the superior court pointed out, the "derogatory communication" that JBG asserted was circulated from DFCS to DOT&PF did not "implicate the commissioner" of DOT&PF who, as explained above, would be the final arbiter of any administrative claim that JBG might bring.

Second, the fact that the commissioner who approved the waiver would also preside over the appeal does not in itself render that commissioner biased. A similar issue was presented in *Standard Alaska Production Co. v. State, Department of Revenue*.[28] There, the commissioner for the Department of Revenue received an opinion letter from the Attorney General that undermined the plaintiff's claims that the Department's tax assessment was time-barred.[29] The commissioner informed the plaintiff in a letter that it would "take a rare and unusual situation" for the Department to disregard the Attorney General's opinion, but the commissioner also stated that it would be "premature, and inappropriate," to decide the question before conducting a full administrative review.[30] We held in that context that although it was "highly possible" that the commissioner would follow the Attorney General's opinion and issue an adverse decision, the commissioner's letter exhibited a genuine willingness to "seriously consider all of [the plaintiff's] legal and factual contentions at a formal

---

[28]   773 P.2d 201 (Alaska 1989).

[29]   *Id.* at 209.

[30]   *Id.*

hearing" and that the plaintiff's failure to exhaust administrative remedies was not excused for bias.[31]

Here, like in *Standard Alaska Production Co.*, it may have been "highly possible" that the DOT&PF commissioner would affirm his own prior decision to grant the DFCS's single source procurement waiver. But JBG did not plead or otherwise assert facts indicating that the commissioner would not honestly and seriously reconsider whether his approval of the waiver was appropriate.

Finally, JBG's contention that the commissioner would be criminally liable if he did not "stand by" his prior decision is legally inaccurate. The procurement code provides that a person is criminally liable if that person makes a misrepresentation "through a trick, scheme, or device" in relation to a State procurement contract.[32] But there are many other reasons the commissioner could reverse his prior decision that would not amount to an admission that he engaged in fraudulent or misleading conduct. For example, the commissioner could determine that he had overlooked a material fact or proposition of law when granting the waiver, and reverse his decision on those grounds.

JBG has therefore failed to identify facts demonstrating any bias that would excuse it from exhausting its administrative remedies.

### 3. JBG failed to identify facts supporting a theory of futility.

In *Bruns*, we provided that exhaustion may also be excused where pursuing administrative remedies would be "futile" or where "the claimant could face irreparable harm if the administrative process is followed."[33]

Here, JBG argues that the superior court's "own findings and factual assumptions show that exhaustion . . . would be futile." It points to the court's statement

---

[31] *Id.*

[32] AS 36.30.687(d).

[33] *Bruns v. Mun. of Anchorage*, 32 P.3d 362, 371 n.46 (Alaska 2001).

that "JBG could not have obtained a final administrative decision voiding the single source procurement waiver through available administrative remedies prior to the State entering the new lease." And it argues that this assumption demonstrated that it "could not have pursued [the] administrative [process] in time to obtain a remedy."

But JBG does not explain how its inability to obtain relief on its "preferred timeline," which was before DFCS entered into the new lease, rendered exhaustion futile. In its motion for a preliminary injunction before the superior court, JBG argued that it would be irreparably harmed by the loss of rent payments from DFCS and by the inability to refinance the Fourth Avenue property without a tenant. JBG's arguments on appeal regarding futility rely on the same reasoning. But to the extent such claims of lost rent and inability to refinance are grounded in claims that DFCS violated the terms of its lease agreement with JBG, the superior court correctly ruled that the loss of rent payments and the inability to refinance are reparable damages that can be satisfied by a money judgment.[34] And to the extent JBG contends that an improper procurement process led to its loss of continued rent payments and an inability to refinance, that argument improperly assumes that DFCS could be forced to remain as a holdover tenant or to renew its lease terms with JBG pending procurement of a new lease agreement — an assumption that JBG disclaimed before the superior court.

Finally, to the extent JBG argues that exhaustion would have proven futile due to loss of the opportunity to competitively bid for DFCS's new lease, that argument also fails. Had JBG sought an administrative remedy for the alleged unlawful single-

---

**34** *See State v. Galvin*, 491 P.3d 325, 333 (Alaska 2021) (stating irreparable harm is harm for which "no certain pecuniary standard exists for the measurement of damages" (quoting *State v. Kluti Kaah Native Vill. of Copper Ctr.*, 831 P.2d 1270, 1273 n.5 (Alaska 1992))). JBG could also have recovered money damages had it filed an administrative appeal and been successful. *See* AS 36.30.620(a) (providing that in an administrative appeal, a contractor may recover an amount that "accurately reflects the contract adjustment for which the contractor believes the state is liable").

source procurement, the procurement officer would have had authority to stay the award pending the outcome of JBG's appeal[35] and, had it prevailed, would have been able to award an "appropriate remedy," which may have included ordering a new bidding process.[36]

In all, JBG failed to identify facts demonstrating that exhaustion would be futile.

**B.    The Superior Court Did Not Abuse Its Discretion When It Determined That The State Was The Prevailing Party And Awarded Attorney's Fees Accordingly.**

Alaska Civil Rule 82(b)(2) provides that "[i]n cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party . . . in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." The prevailing party is the "one who has successfully prosecuted *or defended* against the action, the one who is successful on the 'main issue' of the action and 'in whose favor the decision or verdict is rendered and the judgment entered.' "[37]

JBG does not challenge the reasonableness of the superior court's fee award or its calculation of fees. But JBG does argue that the superior court erred in finding that the State was a "prevailing party" because "the complaint was dismissed without prejudice, leaving JBG to pursue an administrative appeal."

---

[35]    *See* AS 36.30.575 (giving procurement officer authority to stay award of contract if protest is filed and the officer determines in writing that "reasonable probability exists that the protest will be sustained," or that "stay of the award is not contrary" to the State's best interests).

[36]    AS 36.30.585(a) (providing that if a protest is sustained, the procurement officer "shall implement an appropriate remedy").

[37]    *State v. Jacob*, 214 P.3d 353, 359 (Alaska 2009) (emphasis added) (quoting *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1092 (Alaska 2008)).

In *State v. Johnson*, we explained that "when litigation is dismissed as a result of the delay or intransigence of one of the litigants, the trial court may deem the other litigant the prevailing party for purposes of Rule 82."[38] We reasoned that a contrary result "would be inefficient, and would fail to tax dilatory litigants for the additional costs they imposed by requiring their opponents to respond to two actions."[39]

The same reasoning applies here — JBG did not even attempt to discharge its duty to exhaust its administrative remedies. An award of attorney's fees both appropriately penalizes JBG for requiring the State to respond to the action and deters other litigants who might similarly ignore the exhaustion requirement.

## V. CONCLUSION

Because the superior court correctly dismissed JBG's claims for failure to exhaust its administrative remedies, and was within its discretion in awarding the State prevailing party attorney's fees, the judgment of the superior court is AFFIRMED.

---

[38] 958 P.2d 440, 444 (Alaska 1998) (citing *Hart v. Wolff*, 489 P.2d 114, 119 (Alaska 1971)).

[39] *Id.* at n.5.