Lois GILBERT, Appellant,

v.

David SPERBECK, Ph.D., Appellee.

No. S–10842.

Supreme Court of Alaska.

Dec. 9, 2005.

Rehearing Denied Jan. 10, 2006.

Lois Gilbert, pro se, Anchorage.

Brian M. Doherty, Gilmore & Doherty, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

After Lois Gilbert arbitrated a dispute with her insurer, State Farm Insurance Company, she sued the psychologist, Dr. David Sperbeck, who examined her for State Farm and testified as its expert witness in the arbitration. We hold that witness immunity bars Gilbert's fraud and misrepresentation claims against Dr. Sperbeck and that the Americans with Disabilities Act [1] (ADA) does not provide for the relief she seeks. We therefore affirm the summary judgment entered against her in the superior court.

## II. FACTS AND PROCEEDINGS

Lois Gilbert's automobile was rear-ended in an unwitnessed hit-and-run vehicular accident in 1994. She was diagnosed with whiplash on the basis of her representations and filed an uninsured motorist claim with her motor vehicle insurer, State Farm Insurance Company. Her claim was submitted to arbitration per the insurance contract. State Farm retained Dr. David Sperbeck, a clinical psychologist, to perform an independent psychological examination (IPE) of Gilbert and to serve as an expert witness in the arbitration.

Dr. Sperbeck administered several computerized psychological tests to Gilbert and conducted a psychological interview. The tests and interview were administered over two days. During the first day of testing, Gilbert complained that the chair provided by Dr. Sperbeck was insufficiently supportive and caused pain to her back. Gilbert rescheduled the second day of testing due to this back pain.

In his deposition in the arbitration proceeding, Dr. Sperbeck testified that he believed that Gilbert experienced actual pain relating to the 1994 accident, but that a personality disorder complicated the pain and caused Gilbert to over-report symptoms. He concluded that while Gilbert did not have a major psychiatric disorder, she did have a histrionic personality disorder with narcissistic features that "causes her to exaggerate and magnify the degree ... of pain that she's in" and to magnify "the degree of disability that she has."

The arbitrator found that no trauma resulting in injury had occurred in the 1994 accident. He noted in his decision that there was no independent and objective evidence linking any of Gilbert's physical problems to the 1994 accident. He also stated that issues of credibility were central to the dispute, and that he felt compelled to resolve them against Gilbert, who was the only live witness.

Gilbert then filed this lawsuit against Dr. Sperbeck, alleging that he mischaracterized her to the arbitrator and conducted a fraudulent IPE. Gilbert also claimed that Dr. Sperbeck violated the ADA and analogous state and local laws by failing to provide her with an appropriate chair during the evaluation. Her complaint sought an award of damages. The superior court granted Dr. Sperbeck's

___

1. 42 U.S.C. §§ 12101 *et seq.* (1990).

motion for summary judgment on all counts. Gilbert appeals.

## III. DISCUSSION

### A. Standard of Review

▮▮▮ We review grants of summary judgment de novo.[2] "Summary judgment is appropriate where 'there is no genuine issue as to any material fact and ... any party is entitled to judgment as a matter of law.' "[3] We draw all factual inferences in favor of, and view the facts in the light most favorable to, the non-prevailing party (generally the non-movant).[4] We review questions of law de novo and adopt the rule of law that is most persuasive in light of precedent, policy, and reason.[5]

### B. Gilbert's Claims of Fraud and Misrepresentation Are Barred by Witness Immunity.

▮▮▮ Gilbert alleges that Dr. Sperbeck conducted a "fraudulent" examination and that he minimized her injuries and mischaracterized her mental state in his deposition. She alleges that the arbitrator relied on Dr. Sperbeck's deposition in resolving issues of credibility and in ultimately deciding for State Farm, and that this decision deprived her of the insurance coverage to which she was entitled.

In *Lythgoe v. Guinn* we held that quasi-judicial immunity barred a lawsuit against a court-appointed expert witness.[6] Dr. Guinn, a psychologist, was appointed in that case "to act as an independent custody investigator" and to make a custody recommendation to the court.[7] Dr. Guinn "served as an 'arm of the court' and performed a function 'integral to the judicial process.' "[8] The mother, a party to the underlying custody dispute, sued Dr. Guinn, alleging negligent and intentional torts during her investigation and in preparing her report.[9] We concluded that "[c]aselaw and policy considerations clearly support the granting of absolute quasi-judicial immunity to Dr. Guinn" as a court-appointed psychologist.[10]

Dr. Sperbeck was hired by a party to the private arbitration and did not serve in a role analogous to an "arm of the court."[11] We therefore look to the principles of witness immunity, rather than quasi-judicial immunity, to determine whether Dr. Sperbeck is immune from liability for his testimony in the arbitration.

▮▮▮ Testimony in a judicial proceeding, if pertinent to the matter under inquiry, is absolutely privileged, even if given maliciously or with knowledge of its falsity.[12] "Even defamatory testimony is privileged, and the witness granted immunity, because of the public policy rationale that the privilege leads to more just trials by (1) encouraging more witnesses to come forward and (2) ensuring that witnesses will be more open and honest in testifying."[13]

2. *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005).

3. *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1137 (Alaska 2000) (citing Alaska R. Civ. P. 56(c)).

4. *Rockstad*, 113 P.3d at 1219.

5. *Anderson v. State*, 78 P.3d 710, 713 (Alaska 2003).

6. *Lythgoe v. Guinn*, 884 P.2d 1085, 1088–89 (Alaska 1994).

7. *Id.* at 1086.

8. *Id.* at 1088 (quoting *Seibel v. Kemble*, 63 Haw. 516, 631 P.2d 173, 179 (1981)).

9. *Id.* at 1086.

10. *Id.* at 1093.

11. *Cf. Karen L. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 953 P.2d 871, 878–79 (Alaska 1998) (extending absolute quasi-judicial immunity to doctors "initially selected by DFYS and subsequently approved by the court" when doctors were "integral part of the judicial process" and observing that "to deny immunity would disserve the broader public interest that non-judicial officers act without fear of liability") (quoting in part *Lythgoe*, 884 P.2d at 1088).

12. *Cf. Nizinski v. Currington*, 517 P.2d 754, 756 (Alaska 1974) (applying witness immunity to arbitrator sued for alleged libelous statements in affidavit detailing reasons for his decision in underlying case).

13. *Lawson v. Helmer*, 77 P.3d 724, 727 (Alaska 2003) (applying witness immunity to testimony given by lay witnesses sued for alleged defamation in child custody and protective order proceedings).

Gilbert argues that witness immunity applies only to factual, not expert, witnesses. But expert testimony often provides essential help to the finder of fact.[14] In holding that witness immunity barred fraudulent misrepresentation and defamation claims against an opposing expert witness, a federal district court stated that "[t]he overriding concern for disclosure of pertinent and instructive expert opinions before and during medical malpractice actions is no less significant than the clearly-recognized need for all relevant factual evidence during the course of litigation."[15]

Gilbert argues that the truth-encouraging purposes of witness immunity are not furthered by granting immunity to expert witnesses and suggests that additional deterrents from false testimony are necessary because expert witnesses are paid. But we regard the traditional safeguards against untruthful testimony, including the oath or affirmation, the perils of cross-examination, and the threat of perjury prosecution "or other sanctions," as sufficient deterrents.[16]

The same considerations that underlie the application of witness immunity in court proceedings also justify applying the doctrine of witness immunity to the expert testimony given by Dr. Sperbeck in the arbitration matter. As with judicial proceedings, fair and just arbitrations depend on the willingness of witnesses to present relevant evidence in a candid manner. Furthermore, Alaska favors arbitration;[17] this policy would be hampered if arbitration witnesses were not immune from suit to the same extent as litigation witnesses.[18] We assume without deciding here that Dr. Sperbeck was potentially subject to prosecution had he perjured himself during his arbitration deposition;[19] he swore an oath and was subject to cross-examination. And as a licensed psychologist, he was subject to professional discipline.[20] In the context of the adversarial arbitration setting, we regard these deterrents against untruthful testimony by an expert witness as sufficient. We therefore hold that witness immunity bars Gilbert's claims of fraud and misrepresentation against Dr. Sperbeck.[21]

## C. Gilbert May Not Receive Damages Under the ADA.

▪ Gilbert argues that the Americans With Disabilities Act required Dr. Sperbeck

**14.** *See* Alaska R. Evid. 702(a).

**15.** *Kahn v. Burman*, 673 F.Supp. 210, 213 (E.D.Mich.1987).

**16.** *See* Alaska R. Evid. 603; *Lawson*, 77 P.3d at 727 (noting threat of "other sanctions"); *see also Bruce v. Byrne–Stevens & Assocs. Eng'rs, Inc.*, 113 Wash.2d 123, 776 P.2d 666, 667 (1989) (applying witness immunity to expert engineer sued by party who retained him).

**17.** AS 09.43.010(a) provides that "[a] written agreement to submit an existing controversy to arbitration or a provision in a written contract to submit to arbitration a subsequent controversy between the parties is valid, enforceable, and irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract."

Alaska initially adopted the Uniform Arbitration Act in 1968. *See* ch. 232, § 1, SLA 1968. Alaska adopted the Revised Uniform Arbitration Act in 2004. *See* ch. 170, SLA 2004. Arbitration awards are subject to only limited review by courts in Alaska. *See* AS 09.43.500(a) (2004). "[A]rbitration and award" is an affirmative defense to a civil lawsuit. Alaska R. Civ. P. 8(c). We have previously held that we "prefer to encourage arbitration as a rapid and inexpensive means of resolving disputes." *Bd. of Ed., Fair-banks N. Star Borough Sch. Dist. v. Ewig*, 609 P.2d 10, 13 (Alaska 1980).

**18.** *Cf.* AS 09.43.410 (providing that arbitrators are "immune from civil liability to the same extent as a judge of a court of this state acting in a judicial capacity"). AS 09.43.410 became effective January 1, 2005. Ch. 170, § 12, SLA 2004.

**19.** *Cf.* AS 11.56.200(a) ("A person commits the crime of perjury if the person makes a false sworn statement which the person does not believe to be true.").

**20.** *See* AS 08.86.130(a) (listing requirements for licensing of psychologists); AS 08.86.204(a)(5) (providing that state licensing board "may impose a disciplinary sanction" if it "finds that the licensee ... (2) engaged in deceit, fraud, or intentional misrepresentation in the course of providing professional services or engaging in professional activities").

**21.** Our holding makes it unnecessary to consider Gilbert's claims that the superior court erred by (1) declining to require that Dr. Sperbeck produce testing data, questions, and Gilbert's answers, and (2) holding that a videotape showing an episode of "Dateline NBC" was inadmissible as evidence.

to make a reasonable accommodation for her disability.[22] Gilbert argues that Dr. Sperbeck violated the ADA by failing to provide her with a suitably supportive chair during the psychological examination and interview. She claims that Dr. Sperbeck's alleged violation entitles her to damages.

Normally one of the first steps in considering an ADA claim is determining whether the ADA applies to the defendant.[23] But there is no reason in this case to consider whether Dr. Sperbeck's office is a place of public accommodation to which Title III of the ADA applies,[24] because the only relief Gilbert seeks, damages, is not available to her in this case under the ADA. Title III adopts the remedial scheme set out in the Civil Rights Act of 1964 at 42 U.S.C. § 2000a–3.[25] That subsection provides for injunctive relief, but not monetary damages.[26] Title III of the ADA provides for monetary damages only when the United States Attorney General requests them.[27] Because the United States Attorney General has not requested monetary damages here, Gilbert cannot recover monetary damages from Dr. Sperbeck under the ADA.[28] Gilbert has not asked for injunctive relief. The superior court therefore did

not err in granting summary judgment on Gilbert's ADA claim.

**D. Gilbert Has Waived Her Claim for Damages Under AS 18.80.230.**

▮ Gilbert's complaint also alleged that Dr. Sperbeck violated Alaska law prohibiting discrimination on the basis of disability. Alaska Statute 18.80.230(a) makes it "unlawful for the owner, lessee, manager, agent, or employee of a public accommodation (1) to refuse, withhold from, or deny to a person any of its services, goods, facilities, advantages, or privileges because of ... physical or mental disability."

Unlike the remedial scheme of Title III of the ADA, AS 22.10.020(i) permits recovery of monetary damages for violations of AS 18.80.230. Although we have held that AS 18.80.220 imposes a duty on employers to make reasonable accommodations for disabled employees,[29] we have not had occasion to decide the question whether AS 18.80.230(a) imposes an analogous duty on public accommodation or whether an office such as Dr. Sperbeck's is a "public accommodation" as that term is defined in AS 18.80.300(14).[30]

22. As used in the ADA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Gilbert claims that several neck, back, and shoulder injuries and orthopedic problems prevent her from walking for extended periods of time and sleeping. We assume for the purposes of this decision that these physical problems constitute a "disability" as defined by the ADA.

23. *See, e.g., Parr v. L & L Drive–Inn Rest.*, 96 F.Supp.2d 1065, 1085 (D.Haw.2000) ("In order to set forth a prima facie case under Title III of the ADA, a plaintiff must prove that: (1) he has a disability; (2) defendant's [business] is a place of public accommodation; (3) and he was denied full and equal treatment because of his disability.") (citing *Mayberry v. Von Valtier*, 843 F.Supp. 1160, 1166 (E.D.Mich.1994)).

24. Gilbert's claim could only be valid under Title III of the ADA. Title I of the ADA prohibits discrimination in employment. *See* 42 U.S.C. § 12112(a). Title II prohibits discrimination in the provision of public services by public entities. *See* 42 U.S.C. § 12132. Dr. Sperbeck was not

Gilbert's employer, nor was he engaged in the provision of public services.

25. *See* 42 U.S.C. § 12188(a)(1).

26. 42 U.S.C. § 2000a–3(a) (providing that "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved").

27. 42 U.S.C. § 12188(b)(2)(B).

28. *See, e.g., Cole v. National Collegiate Athletic Ass'n*, 120 F.Supp.2d 1060, 1067 (N.D.Ga.2000).

29. *Moody–Herrera v. State, Dep't of Natural Res.*, 967 P.2d 79, 87 (Alaska 1998).

30. AS 18.80.300(14) states that

"public accommodation" means a place that caters or offers its services, goods, or facilities to the general public and includes a public inn, restaurant, eating house, hotel, motel, soda fountain, soft drink parlor, tavern, night club, roadhouse, place where food or spiritous or malt liquors are sold for consumption, trailer park, resort, campground, barber shop, beauty parlor, bathroom, resthouse, theater, swim-

■ It is unnecessary for us to consider these issues here because Gilbert has waived any possible claim she had under AS 18.80.230(a). When considering whether a claim has been waived, "[w]e judge a pro se litigant's performance by a less demanding standard" than we use when evaluating an attorney's performance.[31] Nonetheless, "even when a pro se litigant is involved, an argument is considered waived when the party 'cites no authority and fails to provide a legal theory' for his or her argument."[32]

In *Peterson v. Ek* we held that a pro se litigant's briefing was adequate to avoid waiver of his claims on appeal because, "[a]lthough [the appellant] often failed to cite legal authority to support his arguments, his briefing was such that we could discern his legal arguments and [the appellee] could reply to them."[33] Gilbert's initial briefing to this court quoted AS 18.80.200, which contains the statement of purpose of the Alaska Human Rights Act (AHRA). But Gilbert has advanced no argument that AS 18.80.230(a) applies to Dr. Sperbeck on a theory that his office is a public accommodation or that subsection .230(a) imposed a duty of reasonable accommodation on him.

Furthermore, in her initial briefing Gilbert's discussion of Dr. Sperbeck's alleged failure to provide a suitable chair referred solely to the ADA. Her initial brief in referring to AS 18.80.200 advanced a theory of liability unrelated to Dr. Sperbeck's alleged failure to provide a suitable chair in which to take the examination.[34]

After hearing oral argument, we invited the parties to submit supplemental briefs.

Although Gilbert's supplemental brief, filed after Dr. Sperbeck's supplemental brief per our briefing order, seems to suggest that the alleged failure to provide an adequate chair violated AS 18.80.230(a), her initial brief said nothing about such a theory. Gilbert's failure to raise this theory in her initial brief gave Dr. Sperbeck no notice that his original or supplemental briefs should address the topic. Dr. Sperbeck had no opportunity to respond to this argument.[35] Moreover, Gilbert's discussion of the AHRA is so terse and superficial that, even under the lenient standards for pro se litigants, it fails to preserve her AS 18.80.230(a) claim on appeal. We therefore hold that Gilbert has waived her AS 18.80.230(a) claim.

■ Gilbert also alleged in her complaint that Dr. Sperbeck violated "municipal ... law" by failing to provide reasonable accommodation for her disability. She does not contend on appeal that Dr. Sperbeck violated municipal law or that municipal law precluded entry of summary judgment for Dr. Sperbeck. We therefore hold that Gilbert has waived this claim as well.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the superior court is AFFIRMED.

---

ming pool, skating rink, golf course, cafe, ice cream parlor, transportation company, and all other public amusement and business establishments, subject only to the conditions and limitations established by law and applicable alike to all persons.

**31.** *Peterson v. Ek*, 93 P.3d 458, 464 n. 9 (Alaska 2004) (citing *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)).

**32.** *Id.* (citing *A.H. v. W.P.*, 896 P.2d 240, 243 (Alaska 1995)).

**33.** *Peterson*, 93 P.3d at 464 n. 9.

**34.** Gilbert's initial brief suggested that the psychological tests administered by Dr. Sperbeck

may have been biased against the disabled, and that Dr. Sperbeck used Gilbert's disabilities to portray her as "hysterical" and deprive her of insurance coverage. This is a variation on Gilbert's argument that Dr. Sperbeck conducted a fraudulent IPE and misrepresented her to the arbitrator. It is therefore barred by witness immunity. *See supra* Part III.B.

**35.** *See* Alaska R.App. P. 212(c)(3) (providing that reply brief "may raise no contentions not previously raised in either the appellant's or appellee's briefs").