Rita M. HYMES and Donald L. Hymes, Appellants,

v.

Leonie DeRAMUS, M.D. and James M. Pomeroy, Appellees.

No. S–12761.

Supreme Court of Alaska.

Jan. 15, 2010.

---

24. *See supra* note 10.

28. *Id.*

Donald and Rita Hymes, pro se, Fairbanks.

Megan R. Webb, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

A prisoner and his wife, appearing pro se, brought a lawsuit against a Department of Corrections doctor and physician's assistant based on medical treatment the prisoner received while incarcerated at the Fairbanks Correctional Center. The superior court granted summary judgment to the doctor and physician's assistant because the prisoner did not exhaust his administrative remedies. The prisoner and his wife appeal this and several other actions by the superior court. Because at least one of the prisoner's malpractice claims may not have been subject to an exhaustion requirement, because the prisoner raised material factual disputes as to whether exhaustion should have been excused for the remaining claims (based on an alleged threat of retaliation and alleged lack of access to a grievance manual), and because the superior court should have considered the prisoner's medical expert affidavits, we remand to the superior court. On all other issues, we affirm the decisions of the superior court.

## II. FACTS AND PROCEEDINGS

This is the second time that this case is before us.[1] Donald Hymes, a federal prisoner, was temporarily incarcerated at the Fairbanks Correctional Center (FCC), a state facility, from May 2003 to August 2003.[2] At the time of his incarceration at FCC, Hymes was sixty-eight years old and had various medical problems, including arthritis, high blood pressure, thyroid problems, prostate and bladder problems, psoriasis, and a hernia. He was also taking six prescription medications.

In July 2003 Hymes and his wife Rita Hymes filed a pro se lawsuit against Dr. Leonie DeRamus and Michael Pomeroy, medical personnel who worked with the Alaska Department of Corrections (DOC).[3] Hymes alleged medical malpractice and failure to report elder abuse, while Rita alleged negligent infliction of emotional distress (NIED) and loss of consortium.[4] In the medical malpractice claim, the Hymeses specifically alleged that Hymes was not given the medications and proper medical care that he needed while he was incarcerated. The Hymeses stated in their complaint that even though Hymes had been prescribed six medications by his Veterans Administration doctor, he received none of those medications during his first few days at FCC. According to the complaint, FCC gradually began to provide Hymes with his necessary medications, but did so in an inconsistent fashion. The Hymeses alleged that the only contact Hymes had with a medical doctor in FCC was fifteen minutes with Dr. DeRamus. They also alleged that prison guards refused to accommodate Hymes's bladder problems, and because he was prevented from using the restroom during visits, Hymes suffered uncontrolled urination during these visits. Also, Hymes apparently suffered from high blood pressure and related problems, but he was given only Tylenol when he met with the nurse about his worsening condition. The Hymeses also averred that Hymes was improperly given substitute medications instead of the Methotrexate that he had been prescribed for his psoriatic arthritis. Finally, the Hymeses alleged that Pomeroy threatened to "put Don in the hole if he didn't stop telling people he was not getting adequate medical care...."[5]

In January 2004 Dr. DeRamus and Pomeroy moved for summary judgment, supporting their motion with an expert affidavit from Dr. John Robertson, the Health Services Administrator and Medical Director for DOC, who found no evidence of medical malprac-

---

1. Many of the facts recited below are taken from our opinion in the first appeal in this case, *Hymes v. DeRamus*, 119 P.3d 963 (Alaska 2005).

2. *Hymes*, 119 P.3d at 964.

3. *Id.* Mr. Pomeroy is a physician's assistant. Dr. DeRamus is a collaborating physician and consultant to Mr. Pomeroy. *Id.* n. 1.

4. *See id.*

5. Various other allegations regarding the alleged lack of medical treatment are found throughout the complaint.

tice.[6] The Hymeses responded with an opposition to the motion and a supporting memorandum stating that they did not receive the opportunity to complete discovery and that the superior court had not clarified whether they were required to have a medical expert witness.[7] In February the superior court issued an order explaining to the Hymeses that if they did not provide an expert affidavit "establishing the standard of care due from the defendants, breach thereof, and damages proximately caused by such a breach of duty of care, summary judgment will be entered against them."[8] The superior court gave them a deadline of March 27.[9] On March 26 the Hymeses requested a continuance.[10] The superior court denied the request and granted summary judgment in favor of Dr. DeRamus and Pomeroy.[11]

On appeal we reversed, concluding that the superior court erred in giving the Hymeses only one additional month in which to submit a responsive expert affidavit.[12] We remanded with instructions to grant the Hymeses a reasonable continuance to obtain an opposing expert affidavit.[13]

Upon remand, the case was assigned to Superior Court Judge Robert B. Downes. On November 14, 2005, Judge Downes held a status hearing with the parties. He gave the Hymeses until January 15, 2006, to file their expert affidavit. Judge Downes also noted on the record that he was acquainted with Donald Hymes, one of the defense attorneys, and the father of one of the defense attorneys; he stated that he previously ruled in an unrelated case involving Rita Hymes; and he asserted that these connections would not affect his decisions in the case.

On January 9, 2006, the Hymeses filed the expert affidavit of Dr. Barbara J. Houk, a psychiatrist, and a notarized letter from Dr. Herbert Day, an osteopathic doctor. Dr.

DeRamus and Pomeroy filed a reply on February 14, 2006, arguing that the Hymeses failed to provide admissible evidence to defeat summary judgment on the technical malpractice claims (the claims requiring a medical expert) and that the non-technical claims should be dismissed because Hymes failed to exhaust administrative remedies.

When Dr. DeRamus and Pomeroy filed a reply brief with regard to their initial motion for summary judgment on February 14, 2006,[14] they also filed a motion to amend their answer and a new motion for summary judgment. In the motion to amend, Dr. DeRamus and Pomeroy sought permission to add the defense of failure to exhaust administrative remedies. In the new motion for summary judgment they argued that all of the Hymeses' claims were barred by Hymes's failure to exhaust the administrative remedies available through the DOC's grievance process. The Hymeses did not oppose the motion to amend but did oppose the new motion for summary judgment.

On February 15, 2006, Dr. DeRamus and Pomeroy moved to strike Dr. Houk's affidavit and Dr. Day's letter. They argued that Dr. Houk was not a qualified expert witness for this matter and that Dr. Day's letter was an inadmissible unsworn statement with no relevant information about the medical malpractice claims.

The superior court entered an order on February 23, 2006, addressing the Hymeses' failure to file an opposition to the original motion for summary judgment when they filed the affidavit and notarized letter. The order "advise[d] Plaintiffs that they have the opportunity to submit a supplemental Opposition if they so wish" and gave a deadline of March 7, 2006. The Hymeses did not file a supplemental opposition to the original sum-

6. *Hymes,* 119 P.3d at 964.

7. *Id.* at 964–65.

8. *Id.* at 965.

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* at 964.

13. *Id.* at 968.

14. The Hymeses did not actually file an opposition to the initial motion for summary judgment, but they did file the expert affidavit of Dr. Houk and the notarized letter of Dr. Day, so Dr. DeRamus and Pomeroy chose to respond.

mary judgment motion, but they did oppose the motion to strike.

On April 10, 2006, the superior court granted Dr. DeRamus and Pomeroy's motion to strike the expert affidavit and letter submitted by the Hymeses. However, the superior court provided the Hymeses with forty-five additional days to obtain an expert affidavit that would comply with the requirements of AS 09.20.185(a).

Nevertheless, after only thirty-seven days, on May 17, 2006, the superior court granted the new motion for summary judgment regarding failure to exhaust administrative remedies, dismissing all of Donald Hymes's claims. In the order granting the motion for summary judgment, the court also explained that Rita Hymes's loss of consortium claim was barred by the doctrine of failure to exhaust because it was a derivative claim. The court noted that the NIED claim survived the failure to exhaust defense because it was an independent claim not subject to the DOC grievance procedures. Thus, the NIED claim was the only claim remaining. The Hymeses moved for reconsideration of the court's order, asserting that Donald was a victim of judicial misconduct, due process violations, and a violation of the right to jury trial. The superior court denied the motion. The Hymeses then filed a petition for review, which we denied.

In December 2006 the Hymeses moved to file the expert affidavit of C. Michael Neuwelt, M.D. In the alternative, the Hymeses asked the superior court to refer the case to an expert advisory panel pursuant to Alaska Civil Rule 72.1.

Also in December, Dr. DeRamus and Pomeroy filed a third motion for summary judgment, seeking dismissal of Rita Hymes's NIED claim. In the Hymeses' response, they asked that Judge Downes recuse himself based on alleged bias.

On March 28, 2007, the superior court issued a comprehensive order that resolved the various outstanding motions. The court denied the Hymeses' request for recusal and their request to include Dr. Neuwelt's affidavit in the record. It also declined the request to appoint an expert advisory panel under Civil Rule 72.1 Finally, the superior court entered summary judgment in favor of Dr. DeRamus and Pomeroy on the NIED claim. Later the court denied the Hymeses' motion for reconsideration and entered final judgment in favor of Dr. DeRamus and Pomeroy. The Hymeses appeal, acting pro se.

## III. STANDARD OF REVIEW

[1, 2] We review an award of summary judgment *de novo*.[15] We will affirm only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[16] When making this determination we draw all reasonable inferences in favor of the non-moving party.[17]

[3] We review a decision on a motion for recusal under the abuse of discretion standard and "will not overturn a trial judge's recusal decision unless it is plain that a fair-minded person could not rationally come to that conclusion on the basis of the known facts."[18]

[4] We review "[a] trial court's decision to admit or exclude evidence, including whether to exclude expert testimony . . . for an abuse of discretion."[19]

[5, 6] A trial court's interpretation of court rules presents a question of law that we review *de novo*.[20] However, we review the superior court's decision not to appoint an expert advisory panel under Civil Rule 72.1 using the abuse of discretion standard

**15.** *Sopko v. Dowell Schlumberger, Inc.,* 21 P.3d 1265, 1269 (Alaska 2001) (citations omitted).

**16.** *Id.*

**17.** *Id.*

**18.** *Hanson v. Hanson,* 36 P.3d 1181, 1183 (Alaska 2001) (quoting *R.J.M. v. State,* 946 P.2d 855, 869–70 (Alaska 1997)).

**19.** *Maines v. Kenworth Alaska, Inc.,* 155 P.3d 318, 323 (Alaska 2007).

**20.** *See Staso v. State, Dep't of Transp.,* 895 P.2d 988, 990 (Alaska 1995) (holding that interpretation and application of Civil Rule 42(c) is a question of law that we review *de novo* ).

because "[t]rial judges are not obliged to appoint advisory panels, but rather have discretion to determine whether a panel is necessary."[21]

## IV. DISCUSSION

### A. Whether It Was Error To Grant Summary Judgment in Favor of Dr. DeRamus and Pomeroy Based on Hymes's Failure To Exhaust Administrative Remedies

The superior court granted Dr. DeRamus and Pomeroy's motion for summary judgment with regard to Donald Hymes's medical malpractice and elder abuse claims and Rita Hymes's derivative claim for loss of consortium. The court concluded that Donald failed to exhaust administrative remedies available through the DOC, that the failure was not excusable, and that both Donald's direct claims and Rita's derivative claim were thereby barred.

The Hymeses argue that Donald Hymes was excused from exhausting administrative remedies because he did not receive a prison handbook and was therefore unaware of the procedure for an administrative appeal. They also claim that any failure to exhaust is excusable because members of the DOC staff were biased against him, and that he would have been retaliated against by being placed "in the hole" (administrative segregation, that is, solitary confinement) if he filed a grievance. Dr. DeRamus and Pomeroy respond that the "Department of Corrections has a three-step administrative grievance procedure for medical grievances," that

Hymes failed to exhaust this remedy, and that Hymes's failure to exhaust should not be excused. We analyze these claims and defenses in light of our decision in *Eufemio v. Kodiak Island Hospital.*[22] In *Eufemio* we held that in applying the doctrine of exhaustion of remedies, a court must decide the following: (1) is exhaustion of remedies required; (2) if so, did the complainant exhaust those remedies; and (3) if not, is the failure to exhaust remedies excused?[23]

#### 1. Whether exhaustion of remedies is required in this case based on the factors set out in *Eufemio*

[7] The superior court concluded that exhaustion was required in this case based on our decision in *Broeckel v. State, Department of Corrections.*[24] There we held that the doctrine of exhaustion of remedies generally applies to prisoner grievance cases.[25] However, we have also held that a trial court should use its discretion in a particular case to determine whether exhaustion is required, balancing the interest of the institution in applying its special competence, correcting its errors, and discouraging deliberate flouting of its processes against the complainant's interest in the availability of adequate redress.[26] The decision whether exhaustion of remedies should apply to a given situation should be based on the particular case before the court.[27]

[8, 9] Where the administrative process offers a remedy, even an incomplete one, the policy interests behind exhaustion will usually support requiring exhaustion to allow the agency to "correct its own errors so as to

**21.** *Kaiser v. Sakata,* 40 P.3d 800, 805 (Alaska 2002) (citing AS 09.55.536(a)).

**22.** 837 P.2d 95 (Alaska 1992).

**23.** *Id.* at 98–99.

**24.** 941 P.2d 893 (Alaska 1997).

**25.** *Id.* at 896.

**26.** *Eufemio,* 837 P.2d at 99.

**27.** *See Ben Lomond, Inc. v. Municipality of Anchorage,* 761 P.2d 119, 121 (Alaska 1988) ("Whether a court will require exhaustion of

remedies turns on an assessment of the benefits obtained through affording an agency an opportunity to review the *particular* action in dispute.") (emphasis added); *see also Eufemio,* 837 P.2d at 99 (once clear that doctrine of exhaustion applies to type of case, court should perform balancing in deciding whether to require exhaustion in particular case); *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (superseded by statute as recognized in *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)) (in absence of clear legislative mandate that particular remedy is exclusive, sound judicial discretion governs; application of exhaustion balancing test requires attention be directed to "both the nature of the claim presented and the characteristics of the particular administrative procedure involved").

moot judicial controversies, develop an actual record, and 'discourage the deliberate flouting of its processes.' "[28] On the other hand, where there is no remedy at all, and no available means for the error to be corrected in the available administrative process, courts usually should not require exhaustion.[29] These situations are rare, and in most exhaustion cases that we have analyzed, it has been clear that there was some remedy to exhaust. Thus we have held that exhaustion was required where a prison ordered a prisoner to surrender property that could have been restored to him or for which the Department of Corrections may have been able to reimburse him,[30] and where a building owner who contested the number of permits he was issued could have obtained the correct number of permits through the procedures of a zoning appeal board.[31] Likewise, we have required exhaustion in employment disputes in which terminations can be overturned, privileges restored, or suspensions ended.[32] In *Eufemio*, a physician argued that he should not have been required to exhaust because he sought monetary damages rather than the available remedies in the hospital grievance process, but we held this did not outweigh the strong interests of the hospital in correcting its own errors and "to identify unfair or arbitrary processes, such as a biased tribunal, and correct the deficiency to avoid litigation."[33] If an institution has any means of correcting errors, exhaustion should typically be required.

It is therefore necessary to determine whether Hymes's claims were of the type that could have been addressed by the prison grievance process. Many problems, including some that could be raised as malpractice claims, may be corrected, and the damage mitigated, if the claim is brought to the attention of prison authorities in a timely manner. In those cases, the prison's interest in requiring exhaustion should carry significant weight. One example of such a claim is Hymes's complaint that his medications were provided inconsistently. It is clear from this complaint that Hymes was aware of the risks and problems associated with such a failure, and aware that immediate action could remedy the problem or reduce potential damage going forward. The classic reasons for requiring exhaustion clearly apply to this situation: The prison has an interest in quickly having the situation brought to its attention and having the chance to correct an error in its systems and to mitigate damages. The department should be given the immediate opportunity to evaluate allegedly substandard care and correct its own errors. This gives the department the opportunity to ensure that no harm or deterioration occurs that could have been quickly and efficiently reversed by the grievance process and that it is given the chance to apply its institutional competency in prison administration to remedy defective practices.

On the other hand, certain medical malpractice claims cannot possibly be remedied by any other means than compensatory damages. In a situation in which the medical treatment or error is completely in the past, and the damage to the prisoner's body is irreversibly done, the prison has no means of correcting its own errors. The issue in prisoner malpractice claims in which the harm is completed is not that any remedies are potentially inadequate to fully compensate the plaintiff, as was possible in *Eufemio*, but that the Department of Corrections process offers no remedy at all.[34] Such cases are in a different category than those in which exhaustion is excused for futility or inadequacy; in the futility/inadequacy cases a remedy ex-

28. *Broeckel,* 941 P.2d at 896.

29. *See Eidelson v. Archer,* 645 P.2d 171, 181 (Alaska 1982) (noting that "[T]he exhaustion requirement has been dispensed with where the administrative remedy is inadequate ...."); *see also Bruns v. Municipality of Anchorage,* 32 P.3d 362, 371 (Alaska 2001) (same).

30. *Broeckel,* 941 P.2d at 896.

31. *Ben Lomond,* 761 P.2d at 122.

32. *See Eidelson,* 645 P.2d at 183; *Voigt v. Snowden,* 923 P.2d 778 (Alaska 1996); *Eufemio v. Kodiak Island Hosp.,* 837 P.2d 95 (Alaska 1992).

33. *Eufemio,* 837 P.2d at 99.

34. *See McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (where no effective remedy offered at all, improper to require exhaustion) (Rehnquist, J., concurring).

ists, but the court finds it either extremely unlikely to be provided, or so inadequate that it would not be in the interest of fairness to require it. If a court finds no effective remedy is available, it will generally be an abuse of discretion to require exhaustion of remedies.

We note that one of Hymes's claims may be of the type for which exhaustion is generally not required. The affidavit from Dr. Neuwelt indicates that prescribing Hymes a medication called Feldene may have been an error which caused Hymes long-term damage in the form of increase of blood pressure and renal impairment. The affidavit from Dr. Houk states that it was error to replace Methotrexate with Feldene because Feldene is not appropriate to treat the specific problem Hymes had and that the provider who prescribed Feldene should have monitored renal, liver, and other functions. By the time the elements of this claim were discovered, Hymes was no longer under the care of the Fairbanks Correctional Center and the health care grievance procedure could not correct or lessen Hymes's problem.[35]

The initial step in the *Eufemio* analysis is to determine for which claims exhaustion is required. On remand, after allowing the parties sufficient opportunity to address this question under the guidelines articulated above, the court should determine whether exhaustion is required for any of the claims here. For any claim for which the court finds that exhaustion was required, it should then consider whether, under the third part of the *Eufemio* test, exhaustion should be excused.

### 2. Whether exhaustion of remedies should have been excused for those claims Hymes was required to exhaust

[10] It is undisputed that Hymes did not exhaust his remedies for any of his claims.

We therefore move on to the third element of the *Eufemio* exhaustion analysis: whether the failure to exhaust remedies was excused.

In *Bruns v. Municipality of Anchorage*,[36] we noted that the failure to exhaust may be excused where the administrative remedy is inadequate[37] or "where the administrative procedures are ineffective because of lack of meaningful access, bias, . . . or the possibility that the claimant could face irreparable harm if the administrative process is followed."[38]

The Hymeses argue that Donald's failure to exhaust remedies was excused because he lacked meaningful access to the grievance process. They allege that he was not given a copy of the prisoner handbook or any other source of the rules and regulations regarding grievances. Dr. DeRamus and Pomeroy respond that DOC notified Hymes about inmate rules, rights, and procedures and that the prisoner handbook was available for Hymes's use.

The record reveals that Donald Hymes signed part of an "Orientation Verification" on May 7, 2003. But he refused to sign under the statement that he "received a Prisoner Handbook" because he said that he had not received the handbook. Rather, he signed under the statement that reads, "I have been released from the Fairbanks Correctional Center for less than 90 days and verify that I understand the Prisoner Rules, Rights, and Procedures at this institution. Handbooks are available in each housing unit." Hymes signed his name under this statement even though he had just arrived at the prison. He had not "been released" from the prison as the statement indicates. Thus, the existence of Hymes's signature hardly proves what comes before it. There is no record evidence that he was given access to a handbook, which Timothy Lyden, Standards Administrator for the DOC, explained "con-

---

**35.** Neither the policies and procedures manual of the Department of Corrections nor the regulations governing the Department of Corrections indicate that the department has any authority to pay any form of compensatory damages. *See* 22 AAC 5.185, 5.190.

**36.** 32 P.3d 362, 371 (Alaska 2001) (holding that appellant was not excused from exhausting his

administrative remedies because there remained a step in the administrative appeal process that was not demonstrably futile).

**37.** *Id.* at 371 (citing *Eidelson v. Archer*, 645 P.2d 171, 181 (Alaska 1982)).

**38.** *Id.* at 371 n. 46.

tains instructions regarding grievance procedures over any matter within the Department's control, including an alleged violation of the Department's regulations, a statute, or a procedure set out in the prisoner handbook, and health care issues."

[11, 12] The Hymeses raised genuine issues of material fact in their opposition to the motion for summary judgment and their motion for reconsideration as to whether Hymes had meaningful access to the grievance procedure. In their opposition to the summary judgment motion, they asserted, "Donald Louis Hymes was never given a copy of the rules and regulations regarding grievances." In their motion for reconsideration of the summary judgment ruling, they asserted that Hymes "asked if he could cross out 'received Prisoner Handbook'" because he had not received it but "was told he could not alter the form in any way and had to sign it." They claimed that Hymes "asked whether there was a handbook and was told yes," but "[h]e did not receive one, nor did he ever see one." Because his signature on the "Orientation Verification" is under a clearly inaccurate statement indicating that he had been released from prison, the signature cannot be used to establish that he had any access to the handbook and grievance procedure. Indeed, the Hymeses' assertion in their opposition to the motion for summary judgment was that Hymes had *not* received the prisoner handbook.[39] [Exc. 50] Hymes's allegations create a factual dispute as to whether he lacked meaningful access to the prisoner handbook and the grievance procedures.

[13] The Hymeses also claim that Donald would have been retaliated against by being placed in administrative segregation or solitary confinement if he filed a grievance. [Exc. 29; At. Br. 9] Under our rule regarding grounds for an excuse from the exhaustion requirement, we have included the question of whether following the grievance procedure will threaten a claimant with irreparable harm.[40] We do not interpret this, as the superior court did, to require that Hymes show that he would in fact have suffered irreparable medical harm had Pomeroy retaliated against him. We conclude rather that if Pomeroy did threaten Hymes with the punitive disciplinary sanction of solitary confinement, this threat of retaliation excused him from following the grievance procedures if he reasonably feared he would be irreparably harmed.

Hymes raised a material fact dispute regarding the threat of retaliation in his responses to Dr. DeRamus and Pomeroy's interrogatories, completed in December 2005. He stated: "Dealing with Mr. Pomeroy was extremely stressful.... [A]t one point he told me that if I were to tell anyone that I was not getting adequate treatment from him, he would see to it that I was 'put in the hole.'"

We note that there is a potential tension between Hymes's claim that he was unaware of the grievance procedures and his claim that he did not follow the procedures because he was afraid of retaliation. However, we believe that it is for the fact-finder to weigh Hymes's testimony regarding these two potential excuses with the other evidence to determine what actually took place.

**39.** We note that these statements do not meet the standard to defeat summary judgment under *Jennings v. State,* 566 P.2d 1304, 1309 (Alaska 1977), because they are not in the form of sworn affidavits. If the trial court concluded that there was no evidence that Hymes had no access to the handbook because the statements were not in affidavit form, the court should have advised the Hymeses of the necessity of putting their statements in affidavit form. *See Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987) ("We believe the trial court should inform a pro se litigant of the proper procedure for what he or she is obviously trying to accomplish.") We reject the appellees' contention that our footnote in *Hymes I*—which discussed expert testimony, not the testimony of a party—would have been sufficient to inform

the Hymeses of the requirement for an affidavit to establish facts within Hymes's personal knowledge. *See Hymes,* 119 P.3d 963, 966 n. 12 (Alaska 2005) (explaining that expert testimony and other "such evidence" usually submitted in affidavit form at summary judgment stage). Likewise, the superior court's statements in its memorandum decision to strike the Hymeses' expert affidavits, which outline the formal requirements for affidavits, did not adequately advise the Hymeses of the need to submit affidavits outside of the specific context of medical experts in malpractice cases.

**40.** *Bruns,* 32 P.3d at 371 n. 46.

In sum, genuine issues of material fact remain regarding whether Hymes was excused from the exhaustion requirement due to a lack of meaningful access to the administrative process or a threat of retaliation. Thus, it was error to grant summary judgment on the basis of Hymes's failure to exhaust administrative remedies.[41]

### B. Whether It Was Error To Decline To Consider Expert Affidavits Submitted by the Hymeses

Although the affidavits at issue were not relevant to the two motions upon which the superior court decided this case—the motion for summary judgment for failure to exhaust administrative remedies and the motion for summary judgment on Rita Hymes's NIED claim—they do relate to Donald Hymes's substantive claim of medical malpractice. Thus, the affidavits were relevant to Dr. DeRamus and Pomeroy's motion for summary judgment regarding medical malpractice, which must be addressed on remand. Thus, we address whether the superior court should have considered the affidavits.

In April 2006 the superior court struck Dr. Houk's affidavit, concluding that Dr. Houk lacked the training, experience, and board certification in a relevant field necessary to serve as an expert. In March 2007, as part of its omnibus order granting summary judgment to Dr. DeRamus and Pomeroy, the superior court also denied the Hymeses' request to file the expert witness affidavit of Dr. Neuwelt, explaining among other things that the affidavit did not meet the formal requirements of Civil Rule 76, that the affidavit was filed four months after the deadline, and that all claims relating to Hymes had already been dismissed on May 17, 2006.

The Hymeses argue that the superior court erred in excluding the expert affidavits of Dr. Neuwelt and Dr. Houk.[42] Dr. DeRamus and Pomeroy do not respond on the merits, noting only that the expert affidavits were not relevant to the motions for summary judgment ruled upon by the superior court. But, as noted above, the expert affidavits are relevant to the medical malpractice issue, which the court must address on remand. Accordingly, we address the claim that the expert affidavits should have been considered.

Alaska Statute 09.55.540(a)(1) provides that the plaintiff in a medical malpractice action must prove "the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing." Alaska Statute 09.20.185 further provides:

(a) In an action based on professional negligence, a person may not testify as an expert witness on the issue of the appropriate standard of care unless the witness is

(1) a professional who is licensed in this state or in another state or country;

(2) trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue; and

(3) certified by a board recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue.

(b) The provisions of (a) of this section do not apply if the state has not recognized a board that has certified the witness in the particular field or matter at issue.

### Neuwelt Affidavit

[14, 15] The superior court refused to consider Dr. Neuwelt's affidavit on several grounds: that it was not in the proper form

---

41. The Hymeses argue that exhaustion of remedies should be excused for an additional reason: decision-maker bias. Because Donald's assertions that he did not have access to the grievance procedure and feared retaliation provide a genuine issue of material fact that warrants reversal of summary judgment, we need not address the Hymeses' additional argument.

42. The Hymeses make no argument regarding the exclusion of Dr. Day's letter. Thus, we do not consider the admissibility of Dr. Day's letter. *See Shearer v. Mundt,* 36 P.3d 1196, 1199 (Alaska 2001) ("[I]ssues not briefed or only cursorily briefed are considered waived. . . .").

under Civil Rule 76,[43] that it was untimely, and that it did not meet the requirements of AS 09.55.540 because it was based almost entirely on answers to hypothetical questions and thus failed to address the relevant standard of care, that the defendants lacked knowledge or skill to meet the standard, and that Donald Hymes therefore suffered injuries that he would not have otherwise suffered as a result.

[16] We decline to endorse refusal to consider a document for the failure of a pro se litigant to meet the technical requirements of the civil rules regarding page size and the like, without the litigant having been afforded the opportunity to meet the requirements after notice of them. As to the timeliness of the submission, the superior court granted the motion for summary judgment eight days before the deadline it had itself set. Under these circumstances, the litigant is entitled to have his submission considered. As to the substantive question—whether Dr. Neuwelt's affidavit met the requirements of AS 09.55.540—we analyze the matter somewhat differently than the superior court. It is true that Dr. Neuwelt's affidavit contains his answers to hypothetical questions, but these were all questions that may be relevant to Hymes's medical malpractice claim. The questions track the claims in Hymes's complaint, and they are almost exactly the same as the questions answered by Dr. Houk in her affidavit. Accordingly, Dr. Neuwelt's responses assist in establishing the required standard of care under AS 09.55.540(a)(1). In addition, he meets the qualifications requirements as a board-certified rheumatologist. As a rheumatologist, Dr. Neuwelt is an expert in the treatment of "diseases of the connective tissue."[44] His curriculum vitae reveals that Dr. Neuwelt, who has been the Chief of Rheumatology at the Alameda County Medical Center in Oakland, California, and who has held clinical professorships of medicine at the University of California, San Francisco and Stanford University, has extensive experience and training in rheumatol-

ogy. Therefore, he is qualified to testify regarding the physical effects of abrupt discontinuation of the drug Methotrexate, which Dr. Neuwelt identifies as "the 'gold standard' disease-modifying agent for psoriatic arthritis."

*Houk Affidavit*

[17, 18] The superior court found that Dr. Houk was not qualified as an expert in this case partly because she lacked training or knowledge in "correctional medicine, emergency medicine, endocrinology, orthopedics/the treatment of arthritis, or autoimmune diseases." But these fields are irrelevant to the issue before the court: Could Dr. Houk provide testimony relevant to the standard of AS 09.55.540(a)(1) and did she meet the requirements of AS 09.20.185(a) as to licensure, training and experience, and certification directly relevant to an area of practice at issue in this case? We turn now to those questions.

Dr. Houk's affidavit reveals that she is a psychiatrist and psychotherapist and that she is trained in treating a variety of mental illnesses. Her affidavit discusses the relationship between depression and hypothyroidism, two conditions which Hymes allegedly experienced. She also discusses the consequences of the abrupt discontinuation of the drug, Methotrexate, which include depression. These are areas about which she is qualified to testify as a psychiatrist. Turning to the specific requirements of AS 09.20.185(a), appellees do not contest that she met subsection (1) (licensure), a concession that the superior court accepted and agreed with. Dr. Houk's affidavit reveals that she has sufficient training and experience in psychiatry and psychotherapy and related fields to meet the requirements of subsection (a)(2) (training and experience in an area directly related to a matter at issue) to testify regarding the psychological effects of failing to adequately treat Hymes's physical conditions.[45] However, as to subsection (a)(3), it

---

43. Alaska Civil Rule 76, entitled "Form of Papers," deals with such matters as paper size, fonts, line spacing, and the like.

44. *See* WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 1220 (2d college ed.1980).

45. Indeed, her discussion of the consequences of the failure to provide Hymes with his prescrip-

appears that she lacked board certification in psychiatry. Thus, while it was an abuse of discretion for the superior court to strike Dr. Houk's affidavit on the basis that she did not have sufficient training or experience in "correctional medicine" or the other specialties mentioned by the court, it appears that Dr. Houk lacked the required certification in psychiatry to testify. On the other hand, Dr. Houk indicated in her affidavit that she is a "diplomat[e] of the American Psychotherapy Association." On remand, Hymes should be allowed to offer a qualified expert (or show that Dr. Houk is in fact certified in a relevant area).

[19] Because the affidavit of Dr. Neuwelt met the requirements of AS 09.55.540 and AS 09.20.185, the superior court must consider it on remand. The court should also allow Hymes the opportunity to submit an affidavit of a board-certified psychiatrist in place of Dr. Houk's affidavit (or show that Dr. Houk is board-certified).[46]

## C. Whether It Was Error To Grant Summary Judgment in Favor of Dr. DeRamus and Pomeroy in Relation to Rita Hymes's NIED Claim

[20] The superior court granted Dr. DeRamus and Pomeroy summary judgment on Rita Hymes's NIED claim, holding that she did not meet the requirements for the bystander or preexisting duty exceptions to the general requirement of physical injury.

The Hymeses appear to argue that it was inconsistent for the superior court to deny Dr. DeRamus and Pomeroy's motion for summary judgment regarding failure to exhaust administrative remedies in relation to the NIED claim and then grant Dr. DeRamus and Pomeroy's subsequent motion for summary judgment in relation to the NIED claim. Dr. DeRamus and Pomeroy respond that the superior court's denial of the "motion for summary judgment regarding the failure to exhaust defense in relation to the NIED claim ... did not constitute a grant of summary judgment in the Hymes' favor," but rather "merely reflected that DeRamus was not entitled to summary judgment under this legal theory." Dr. DeRamus and Pomeroy assert (1) that it was not inconsistent for the court to grant the "new motion for summary judgment under a different legal theory," and (2) that the Hymeses fail to make any substantive challenge to the order dismissing the NIED claim, so this court should deem any such challenge waived. We agree with both propositions.

The superior court's order granting summary judgment in favor of Dr. DeRamus and Pomeroy on Rita Hymes's NIED claim is not inconsistent with the court's earlier order denying summary judgment on the NIED claim on the basis of failure to exhaust administrative remedies. In the earlier order, the court denied summary judgment in relation to the NIED claim because "as a non-prisoner," Rita was not obligated to exhaust administrative remedies. The court granted summary judgment in the later order based on a substantive analysis of Rita's NIED claim.

[21] Because the Hymeses fail to make a substantive argument regarding the merits of the NIED claim, they have waived the issue under our well-established rule that issues not argued in opening appellate briefs are waived.[47] This rule applies equally to pro se litigants.[48] Although we require courts to provide some procedural guidance for a pro se litigant when it is clear what "action he or she is obviously trying to accomplish," the failure to raise an argument in an opening brief leaves the other party with

---

tion medicines would assist the trier of fact to determine "the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances" under AS 09.55.540(a)(1).

**46.** Although they do not address the issue in the argument section of their brief, the Hymeses briefly reference the superior court's decision not to appoint a Civil Rule 72.1 expert advisory panel (EAP) in their issue statement. Because they fail to make any substantive argument that the superior court erred by failing to refer the case to an EAP, the Hymeses have waived the issue. *See Shearer,* 36 P.3d at 1199.

**47.** *See Shearer,* 36 P.3d at 1199.

**48.** *Gilbert v. Sperbeck,* 126 P.3d 1057, 1061 (Alaska 2005).

no notice or opportunity to respond to the argument.[49]

### D. Whether It was an Abuse of Discretion for Judge Downes Not To Recuse Himself

[22] In the order granting Dr. DeRamus and Pomeroy summary judgment on the NIED claim, Judge Downes also denied the Hymeses' request for recusal, stating that he knows Hymes, "bears him no ill will, is not biased against Mr. Hymes, and in fact has enjoyed [his] acquaintance." Judge Downes had earlier addressed the Hymeses' allegations of bias in his order denying reconsideration of his decision granting summary judgment for failure to exhaust. In this order Judge Downes stated that "[t]his Court routinely entertains motions for summary judgment, and to do so is not misconduct," and that the Hymeses' "allegation that this Court is biased against them is unfounded and unsupported...."

On appeal, the Hymeses argue that Judge Downes should have recused himself because he was biased against them. Dr. DeRamus and Pomeroy respond that "the claims of bias were based simply on Judge Downes' adverse rulings," and, as such, the claims are not sufficient to show that the judge's decision not to recuse himself was an abuse of discretion.

Alaska Statute 22.20.020(a)(9) provides that "[a] judicial officer may not act in a matter in which ... the judicial officer feels that, for any reason, a fair and impartial

decision cannot be given." In *Amidon v. State*,[50] we explained that "[s]ince the initial determination has been placed in the discretion of the trial judge, his decision should be given substantial weight," and the decision not to recuse should be reviewable only for abuse of discretion.[51] Also, in *DeNardo v. Corneloup*,[52] we stated, "[j]udges should recuse themselves if there is the appearance of bias, but '[b]y themselves, interpretations of the law are not sufficient to demonstrate the existence of bias.'"[53] We elaborated in *DeNardo* that "[d]isqualification was never intended to enable a discontented litigant to oust a judge because of adverse rulings."[54]

[23] The Hymeses make various references to judicial bias, but they lack a persuasive argument that it was an abuse of discretion for Judge Downes to not recuse himself from the case. Their arguments indicate that the Hymeses are merely displeased with Judge Downes's interpretations of the law and adverse rulings involving the exclusion of expert affidavits. Under AS 22.20.020(a)(9) and the cases interpreting it, the Hymeses' complaints are insufficient to show that Judge Downes's decision not to recuse was an abuse of discretion.[55]

### E. Whether the Hymeses Waived Their Argument that Dr. DeRamus and Pomeroy's Treatment of Hymes Violated the Eighth Amendment

[24] The Hymeses argue that Dr. DeRamus and Pomeroy's poor treatment of Hymes violated the Eighth Amendment of the United States Constitution.[56] Dr. DeRamus and

49. *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987); *see Gilbert*, 126 P.3d at 1062.

50. 604 P.2d 575 (Alaska 1979).

51. *Id.* at 577.

52. 163 P.3d 956 (Alaska 2007).

53. *Id.* at 967 (quoting *Jourdan v. Nationsbanc Mortgage Corp.*, 42 P.3d 1072, 1082 (Alaska 2002)).

54. *Id.* (quoting *Wasserman v. Bartholomew*, 38 P.3d 1162, 1171 (Alaska 2002) (internal quotation omitted)).

55. The Hymeses also appear to allege that granting summary judgment to Dr. DeRamus and Pomeroy violated their right to trial by jury.

However, we have held that the right to trial by jury is not impinged by summary judgment that was properly granted. *See Christensen v. NCH Corp.*, 956 P.2d 468, 477 (Alaska 1998). Because we hold that summary judgment was improper for a different reason—on the basis that genuine issues of material fact remain as to whether Hymes' failure to exhaust administrative remedies was excused—we need not reach the issue of the constitutional right to a jury trial. *See Alaska Trademark Shellfish, LLC v. State*, 91 P.3d 953, 957 (Alaska 2004) (stating that "appeals should ordinarily not be decided on constitutional grounds when narrower grounds are available").

56. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Pomeroy respond that the claim is waived because the Hymeses did not plead a claim under 42 U.S.C. section 1983 alleging a violation of their federal constitutional rights but rather only alleged medical malpractice and negligence.

We have repeatedly held that "a party may not raise an issue for the first time on appeal." [57] In *Willoya v. State, Department of Corrections*,[58] we held that a prisoner waived his Eighth Amendment claim by failing to raise it in the superior court.[59] The present case is strikingly similar to *Willoya*. Here, like the plaintiff in *Willoya*, Hymes alleged negligence based on medical treatment he received while incarcerated.[60] Like the plaintiff in *Willoya*, Hymes alleged a violation of the Eighth Amendment for the first time on appeal. As *Willoya* makes clear, the Hymeses waived their Eighth Amendment claim because they did not raise it in the superior court.

### F. Whether the Superior Court Properly Dismissed the Hymeses' Elder Abuse Claim on Summary Judgment

[25, 26] The superior court granted Dr. DeRamus and Pomeroy's motion for summary judgment with respect to the Hymeses' claim for failure to report elder abuse. Although the Hymeses do not make any substantive argument regarding elder abuse on appeal, they do set forth the language of AS 47.24.013(a) and AS 47.24.015(a), which are provisions of the elder abuse statute. They also state, "[n]o one has done anything in Appellants' case to honor the intent of the foregoing statutes. I.e., those statutes appear to be not worth the paper they are written on." Dr. DeRamus and Pomeroy respond that the Hymeses have waived any challenge to the superior court's dismissal of the claim because they failed to "make any kind of substantive argument." In the alternative, Dr. DeRamus and Pomeroy argue that "AS 47.24 does not create a private

cause of action," so the Hymeses "failed to plead a viable claim."

[27] The Hymeses' quotation of statutory language coupled with the conclusory statement that "[n]o one has done anything" to "honor the intent" of the statute constitutes waiver for failure to adequately brief the issue.[61] Even if they had not waived their argument, it would still be without merit. Alaska Statute 47.24.013(a) provides:

> If a report received under AS 47.24.010 regards the abandonment, exploitation, abuse, neglect, or self-neglect of a vulnerable adult who is 60 years of age or older that is alleged to have been committed by or to have resulted from the negligence of the staff or a volunteer of an out-of-home care facility, including a facility licensed under AS 47.32, in which the vulnerable adult resides, the department shall transfer the report for investigation to the long term care ombudsman under AS 47.62.015.

Alaska Statute 47.24.015(a) further provides that "[u]pon the department's receipt of a report under AS 47.24.010 that is not transferred under AS 47.24.013, the department, or its designee, shall promptly initiate an investigation to determine whether the vulnerable adult who is the subject of the report suffers from abandonment, exploitation, abuse, neglect, or self-neglect." Nothing in these two provisions creates a private right of action for elder abuse. Rather, the provisions require reporting of elder abuse and set out the procedures that shall be taken if a report is received by the Department of Health and Social Services. As Dr. DeRamus and Pomeroy point out, "the Act intends to protect against such alleged abuse by ensuring that reports of harm are properly investigated and followed up by the state." Because the elder abuse statute does not create a private cause of action, the superior

---

**57.** *Brandon v. Corr. Corp. of America,* 28 P.3d 269, 280 (Alaska 2001).

**58.** 53 P.3d 1115 (Alaska 2002).

**59.** *Id.* at 1125.

**60.** *Id.*

**61.** *See Shearer v. Mundt,* 36 P.3d 1196, 1199 (Alaska 2001) ("[I]ssues not briefed or only cursorily briefed are considered waived.").

court did not err in dismissing the Hymeses' claim on summary judgment.[62]

## V. CONCLUSION

Because Donald Hymes had at least one malpractice claim that may not have been subject to the exhaustion requirement, and because he raised material fact disputes regarding whether exhaustion should have been excused (for lack of meaningful access to the DOC grievance procedure or the threat of solitary confinement for continuing to complain about his treatment), we REVERSE the grant of summary judgment that was based on his failure to exhaust the DOC grievance procedure and REMAND this case to the superior court. Because the Hymeses' medical expert affidavits should not have been excluded, those affidavits must be considered on remand in order to determine the underlying merits of the Hymeses' medical malpractice claim. We AFFIRM all other decisions of the superior court.

MATTHEWS, Justice, not participating.

---

**62.** The superior court actually dismissed the claim on the basis of Hymes's failure to exhaust administrative remedies, but we are "not bound by the reasoning articulated by the superior court and can affirm a grant of summary judgment on alternative grounds, including grounds not advanced by the superior court or the parties." *Hoffman Constr. Co. of Alaska v. U.S.* *Fabrication & Erection, Inc.*, 32 P.3d 346, 351 (Alaska 2001). Thus, we affirm the grant of summary judgment as to the elder abuse claim because the Hymeses have waived their argument, and even had they not waived it, the elder abuse statutes do not create a private right of action.